Dorothy **MUSSER**, Plaintiff-Respondent,

v.

**GENERAL REALTY COMPANY, Inc., a** Corporation, Defendant-Appellant.

No. 46223.

Supreme Court of Missouri,

Division No. 1.

April 14, 1958.

Rehearing Denied May 12, 1958.

Cliff H. Bailey, Kansas City, for defendant-appellant.

Francis L. Roach, Solbert M. Wasserstrom, Dean C. Allard, Kansas City, for respondent.

VAN OSDOL, Commissioner.

Defendant has appealed from a decree by which title in defendant by virtue of an absolute deed to Lot 18, Adler's High View Addition, Jackson County, executed by plaintiff and her former husband, grantors, to defendant, grantee, was subjected to a constructive trust and the equitable interests of the parties, plaintiff and defendant, were ascertained and determined.

Plaintiff had alleged that she was the owner of the described real estate which was subject to a lien securing the payment of $7,200; that defendant, in order to induce plaintiff to vest title in defendant and with the express understanding and agreement that the property was to be held in trust for the respective interests of plaintiff and defendant, contracted with plaintiff to finish the incomplete improvements at a cost of not to exceed $2,500 and to sell the completely improved property at a price agreeable to both parties, the profit from the sale to be equally divided between plaintiff and defendant; that, relying upon such understanding and agreement, plaintiff executed and delivered to defendant a deed, dated June 14, 1955; and that defendant has now refused to recognize plaintiff's interest in the property.

Defendant by answer alleged that plaintiff's petition failed to state a claim upon which relief could be granted; pleaded the Statute of Frauds, Section 432.010 RSMo 1949, V.A.M.S.; and further alleged that plaintiff and her former husband had executed and delivered the deed of June 14, 1955, as an absolute conveyance to defendant, the consideration being that defendant was to assume the stated encumbrance and satisfy other obligations owing by plaintiff and her former husband.

Defendant-appellant has stated that the principal questions presented herein upon appeal are whether the petition states a claim on the theory of a trust and, if so, whether the trial court's decree engrafting a constructive trust was supported by the evidence; and whether the judgment is

responsive to the pleadings and the evidence.

On and before June 14, 1955, plaintiff was the wife of Marion Thomas Downen. Title to the described property was vested in them jointly, but subject to an encumbrance of $7,200. At the time, plaintiff and her husband were estranged, and plaintiff was divorced from Downen July 8, 1955. Plaintiff was married to her present husband, Musser, November 25, 1955. Defendant is a corporation engaged in handling real estate, of which corporation one Harper is an officer and one of the principal stockholders. June 14, 1955, the property was conveyed by plaintiff and her husband Downen to defendant by warranty deed reciting the consideration of "one dollar and other Valuable Considerations."

Plaintiff testified that she had used her own funds in buying the property, and that none of the purchase price had been contributed by her former husband Downen. When she bought the property the improvements consisted of a "sub-floor on the basement of a home to be completed later." A loan, originally $7,500, secured by deed of trust, was procured, and out of the money borrowed and by the use of her own funds, plaintiff continued in improving the property and on June 14, 1955, there remained the work of constructing a garage, a breezeway, drains and a basement wall; and the work of decorating the interior. Plaintiff considered she had a $2,500 "equity" in the property.

Plaintiff further testified that Harper who, as stated, is an officer of defendant corporation, called on her at her place of employment. Harper, who had introduced himself as a personal friend of her husband Downen, was apparently familiar with the property and the progress of the work in completing the improvement thereon. Harper represented that it would take no more than $2,500 to complete the improvement, and stated that he would like to take over the house and complete it. He said he could and would finish the house in not more than six weeks at a cost of not to exceed $2,500, and would put it up for sale immediately. He would allow plaintiff $2,500 for her "equity" and one half of the profit, or excess over the $2,500 equity and $2,500 cost of completing the improvement. Harper interviewed plaintiff at least three times, asking her to enter into the arrangement; and, as we have said, June 14th plaintiff and her husband joined in the conveyance to defendant.

Plaintiff said she signed the deed at the home of her mother. Harper had brought the instrument there. It already bore the signature of the husband. When she signed, plaintiff asked Harper, "How will I be assured that I will be entitled to half the profit after the house has been completed * * * ?" Harper replied, "I will bring you a paper stating that you will be entitled to half the profit over and above the costs." He said he would bring the paper in a day or two. This testimony was corroborated by the testimony of plaintiff's mother who said she was present and heard the conversation concerning the conveyance and agreement. Plaintiff's testimony was also in part corroborated by the testimony of her employer, who had overheard Harper speak with plaintiff during one of the two or three interviews between plaintiff and Harper at the employer's place of business. The employer said he heard Harper speak "regarding some real estate deal (about a house) and he (Harper) said something about bringing an agreement in two or three days."

After signing the conveyance, plaintiff several times made inquiry as to the progress in completing the improvement. Harper assured plaintiff that it was coming along "just fine." In January 1956, plaintiff saw an advertisement of sale of the property, and called Harper to ask the price at which it was held for sale. She also inquired about the "piece of paper stating I was entitled to half of the profit. * * * He told me if he ever told me he was going to give me half the profit he didn't mean it, he wasn't going to."

On the other hand, Harper testified that he had made all arrangements for taking over the property with plaintiff's husband Downen who had importuned defendant to "take the house over for what was against it; that he was being sued; that he was going to lose the place anyway, and wanted to save his credit and name and everything, and wanted me to take it over." The witness Harper and another of defendant's stockholders examined the property and agreed with plaintiff's husband Downen that "we would take it over if that was all right with him." The testimony of plaintiff's husband Downen supported Harper's version. (We have noted that the trial court in its findings and decree recited and declared that the former husband has no interest in the property, although the husband was not a party to the action. We suppose the trial court was considering the facts that the husband admittedly had joined in the conveyance to defendant and, in testifying at the instance of defendant and in its behalf, the husband disclaimed any interest in the property.)

Harper further testified that plaintiff twice called him by telephone asking the selling price of the house. In the first instance, plaintiff wanted to get "the place back." He told her the price was $14,500. She called again "in January and said she couldn't give that. She talked like she might give $12,500 for it and said if you don't pay me my equity she said she would sue. * * * I told her 'just sue and be damned.'"

There was evidence that defendant had paid out $2,308.07 for materials and labor in completing the improvement. Defendant also claimed $3,042 as the value of labor said to have been performed by Harper and another of defendant's stockholders, personally, in working on the building. The trial court allowed defendant $2,500 for expenditures toward completing the improvements, and allowed defendant other sums expended in paying an obligation incurred by plaintiff and her former husband in purchasing storm windows and doors, and for installments on the loan, taxes and insurance theretofore and thereafter to be paid by defendant.

In examining the petition we have noted the allegation that plaintiff conveyed on the strength of defendant's agreement and there is no allegation of a confidential or fiduciary relationship existent between the parties and no specific allegation of facts, which if supported by evidence, would amount to fraud. The petition, strictly construed, merely avers that defendant refuses to recognize plaintiff's interest in the property. However, the petition does aver that, in order to induce plaintiff to vest title in defendant, defendant had agreed to hold the property in trust and complete the improvement and sell and divide the profit; and, as stated, that defendant has refused to recognize plaintiff's interest. We think that the petition, liberally construed and fully given its fair intendment, was sufficient in justifying the admission of evidence tending to show that defendant, when the agreement was made, had no intention of performing it. And the evidence introduced by plaintiff, which we have set forth, supra, went in without objection, except a general objection "to any evidence being offered" at the beginning of the trial. We consider the petition as if amended to conform to the proof, and sufficient. Jankowski v. Delfert, 356 Mo. 184, 201 S.W.2d 331; Section 509.500 RSMo 1949, V.A.M.S.

Defendant-appellant's contention that the allegations of defendant's answer stand admitted because plaintiff did not file a reply is without merit. Defendant's answer contained no counterclaim denominated as such, and the trial court did not order a reply to the answer. Sections 509.010 and 509.400 RSMo 1949, V.A.M.S.

Defendant-appellant, in urging that the petition failed to state a claim and that the evidence was insufficient in supporting the equitable relief of a constructive trust, principally relies on Long v. Conrad, Mo.Sup.,

42 S.W.2d 357, in which plaintiff did not furnish the purchase price; the evidence did not support fraudulent intent when the alleged agreement was made; and plaintiff's evidence pointed only to the understanding that he was to share in the profits upon defendant's sale of the land; Parker v. Blakeley, 338 Mo. 1189, 93 S.W.2d 981, in which this court, upon examination of the contention that a constructive trust arose in plaintiff's favor, considered that the evidence did not show any fiduciary relationship, and that the only evidence, tending to show the alleged oral promise was fraudulently made, was the evidence that defendant did not make the sale as she had agreed; and Purvis v. Hardin, 343 Mo. 652, 122 S.W.2d 936, in which defendant paid the entire consideration for the land; the alleged agreement was no more than that plaintiff was to share in the profits; and there could have been nothing more in the transaction than the mere violation of a parol agreement. These cases are in harmony with the rule originally stated in 1 Beech on Modern Equity Jurisprudence, § 234—"Equity does not pretend to enforce verbal agreements in the face of the Statute of Frauds, and the person holding the legal title to real estate will not be decreed to be a constructive trustee, unless there is something more in the transaction than the mere violation of a parol agreement. Accordingly, the mere refusal of a trustee to execute an expressed trust, or the denial of the existence of the trust by him, does not make a case for raising a constructive trust. And where a conveyance in trust is made voluntarily, without solicitation or undue influence, and no fraud is shown prior to, or contemporaneous with, the execution of the deed, but consists in denying and repudiating the agreement to reconvey, it will not remove the case from the operation of the Statute of Frauds." Weiss v. Heitkamp, 127 Mo. 23, 29 S.W. 709; Ferguson v. Robinson, 258 Mo. 113, 167 S.W. 447; Parker v. Blakeley, supra. We have considered that the quotation is in accord with the general rulings of the

decisions in this country wherein constructive trusts are sought to be invoked in courts of equity upon real property conveyed by voluntary deed. See Strype v. Lewis, 352 Mo. 1004, 180 S.W.2d 688, 155 A.L.R. 99, and cases therein cited. More recently, in the case of Basman v. Frank, Mo.Sup., 250 S.W.2d 989, 993, this court announced the principles applicable to that case, and quoted Restatement, Restitution, § 182, as follows,

"Where the owner of an interest in land transfers it inter vivos to another upon an oral trust in favor of the transferor or upon an oral agreement to reconvey the land to the transferor, and the trust or agreement is unenforceable because of the Statute of Frauds, and the transferee refuses to perform the trust or agreement, he holds the interest upon a constructive trust for the transferor, if

"(a) the transfer was procured by fraud, misrepresentation, duress, undue influence or mistake of such a character that a transferor is entitled to restitution, or

"(b) the transferee at the time of the transfer was in a confidential relation to the transferor, or

"(c) the transfer was made as security for an indebtedness of the transferor."

In the Basman case the facts with which this court treated demonstrated a confidential relation between defendant and plaintiff. See also Wilber v. Wilber, Mo., 312 S.W.2d 86. It is not inappropriate here to observe that facts of a case may justify the equitable relief invoking a constructive trust under one or two or three of the subsections (a), (b) and (c) of § 182, Restatement, supra; or may justify such equitable relief where a defendant has become vested with the legal title by other means than by voluntary deed. The forms and varieties of constructive trusts are practically without limit. Phillips v. Jackson, 240 Mo. 310, 144 S.W. 112. See the dis-

cussion by this court in Swon v. Huddleston, Mo.Sup., 282 S.W.2d 18, 55 A.L.R.2d 205, although in that case this court was particularly examining the facts in determining whether a constructive trust should be invoked where defendants' predecessor had become vested with title by *involuntary* sale. We also remark that in Strype v. Lewis, supra, this court was considering a case where there was an alleged oral agreement by a *devisee*. See now Annotations, 66 A.L.R. 156, and 155 A.L.R. 106; Restatement, Restitution, § 186. Thieman v. Thieman, Mo.Sup., 218 S.W.2d 580, is a case in which defendant had procured title by misrepresentation of fact. We think the Thieman case, under the shown facts of defendant's promise or agreement, is in point and supports our decision here.

In the instant case the verbal evidence introduced by the parties plaintiff and defendant was in conflict and the documentary evidence was equivocal in tending to support and refute the oral agreement as was alleged, and in tending to show the intention of defendant with respect to the performance of the agreement at the time it was made. Obviously, the trial chancellor believed plaintiff and her witnesses, and accepted as true her evidence tending to show the understanding, agreement or promise was made by defendant in inducing the transfer, by deed, of plaintiff's substantial property interest or so-called "equity" to defendant. Here, of necessity, in our review de novo, we should defer to the trial chancellor's findings and conclusions on the conflicting evidence. Wilber v. Wilber, supra. Ignoring defendant's evidence insofar as it conflicts with plaintiff's, plaintiff's evidence was clear and unequivocal in tending to demonstrate the oral agreement as alleged. The oral agreement having been established by clear and convincing evidence, we have observed that defendant's refusal to recognize plaintiff's interest as contemplated by the oral agreement is admitted. Defendant's refusal to recognize plaintiff's interest in compliance with the agreement or promise was some evidence tending to support the finding that defendant did not intend to perform it when made. But in this case we have further evidence, no doubt believed by the trial chancellor, that defendant's officer said, in effect, that if he had made such an agreement "he didn't mean it" and wasn't going to perform it. The agreement by defendant by inducement procuring the conveyance to defendant may be said to be a misrepresentation of the fact of defendant's intention at the time the agreement was made and justified the engrafting of a constructive trust on the legal title conveyed. See now Thieman v. Thieman, supra, in which defendant suggested that plaintiff sell her house and that defendant sell his farm, the proceeds of such sales to be used in the purchase of a house for themselves. The defendant had no present intention of selling his land, "he merely wanted to get his (defendant's) name on the deed * * *." [218 S.W.2d 582.]

Since we here, de novo, having given deference to the trial chancellor's findings on the conflicting verbal evidence, consider the quality of proof as clear and convincing in establishing plaintiff's right to the relief of a constructive trust, the trust so implied is not affected by the Statute of Frauds, or by Section 456.010 RSMo 1949, V.A.M.S. Swon v. Huddleston, supra; Strype v. Lewis, supra; Parker v. Blakeley, supra; Thierry v. Thierry, 298 Mo. 25, 249 S.W. 946; Bryan v. McCaskill, 284 Mo. 583, 225 S.W. 682; Section 456.030 RSMo 1949, V.A.M.S.

The trial court's judgment and decree should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.