Bessie A. WILBER, Respondent,

v.

Joel M. WILBER, Appellant.

No. 46151.

Supreme Court of Missouri,
Division No. 1.
·April 14, 1958.

Kenneth E. Bigus, Leon E. Bloch,. Jr., Kansas City, for appellant.

Ruby D. Garrett, Thomas B. Welton, Kansas City, for plaintiff-respondent.

COIL, Commissioner.

Bessie and Joel Wilber, plaintiff and defendant below, were married in 1944, lived together until their separation in March 1954, and were divorced in October 1955. On June 1, 1948, title to real estate located at 3419 Troost Avenue in Kansas City was conveyed by warranty deed to plaintiff and defendant as tenants by the entirety under the circumstances hereinafter mentioned. In this suit, instituted subsequent to the divorce, plaintiff sought to be declared the sole owner of the property in question, while defendant claimed a one-half interest as a tenant in common. The trial court's judgment was that plaintiff was the sole owner of, and that defendant had no right, title, or interest in, the property.

It is plaintiff's theory that defendant, as cograntee in the warranty deed, held the interest conveyed to him upon a constructive trust for her. Defendant contends that plaintiff's evidence not only failed to support a conclusion that any trust arose but that, on the contrary, all the evidence showed the parties owned the property as indicated by the face of the deed, viz., as tenants by the entirety who became tenants in common by reason of their divorce.

We first state some undisputed facts. The Troost property consisted of apartments which, after being repaired and remodeled, were rented. The total purchase price was $14,000, of which $6,000 was paid in cash and $8,000 evidenced by a note to be paid monthly secured by a deed of trust. The note and deed of trust were signed by both plaintiff and defendant. The total purchase price had been paid prior to the institution of this suit. In 1936, prior to their marriage, the parties had purchased the Donner Transfer Company by each contributing the sum of $250 and had operated that business as a partnership until March 15, 1954. The Donner partnership bank account was the only one either party had at any of the times here pertinent. From 1927 until 1947, plaintiff operated a beauty shop and, after the purchase of the transfer company in 1936, also took care of telephone calls and inquiries and kept books and records for the partnership.

In 1946 plaintiff and her daughter purchased property on Holmes Avenue in Kansas City which, shortly after their marriage, plaintiff and defendant occupied as their residence until the acquisition of the property in litigation. Defendant had no interest, and claims none, in the Holmes property. In August 1949 plaintiff and her daughter sold the Holmes property, from which each received one half of a $3,000 down payment and each had received and was receiving at trial time one half of $110.32 monthly payments which were to continue until 1959.

We now state plaintiff's evidence as to the circumstances surrounding the acquisition of the Troost property. Between February and June 1948 plaintiff looked at the property several times and discussed its possible purchase with the owners. The original asking price was $16,000 which she persuaded sellers to reduce to $14,000. She intended to buy the property in her own name and her husband had nothing to do with the negotiations for its purchase except that he did look at it with her on one occasion. Shortly prior to the purchase, defendant told her that it had been embarrassing for him to have lived in the Holmes property and not to have had it in his name; that it would look better and suit him better and avoid embarrassment to him if plaintiff would have his name included in the deed; and that if she would do so, he would never make any claim to an interest in it, would convey it as she might direct at any time, and the property would always be hers. Acting upon and relying upon those representations, plaintiff had her husband's name inserted in the deed and, even though she did not consult with counsel as to the wisdom of so doing, she realized that the deed thereby showed that he had an interest in the property.

During the 20 years she had operated a beauty shop, plaintiff had accumulated about $8,000 which she kept in a safe-deposit box rented by her daughter. She

made the down payment of $6,000 in cash from that money and, in the presence of defendant, received a receipt from the sellers made to her as an individual. Plaintiff and defendant moved into the property some time in early August 1948 and continued to live there until defendant left in March 1954. Plaintiff made all the plans for the addition of kitchenettes and other remodeling and, in the main, furnished the materials and work which went into the improvement of the property and rented and collected the rent for each of the apartments. She used most of her half of the $3,000 down payment received from the sale of the Holmes property in improving the Troost property. She also used some of the $2,000 remaining in the safe-deposit box after payment of the $6,000 in refurbishing the property. She made all the monthly payments on the purchase price note from her separate funds (mainly rentals from the Troost property) until the entire balance of $8,000 had been paid. No part of any such payment came from any of defendant's funds.

As noted, the only bank account was the partnership account of Donner Transfer Company. Plaintiff received the rents from the Troost property and later the monthly payments from the Holmes property, sometimes made certain payments in cash, but, in most instances, deposited all those receipts in the Donner account and wrote checks on that partnership account to make the monthly payments on the note and to make all other payments to satisfy obligations pertaining to the Troost property. She sent one daughter a monthly check for one half the $110 received from Holmes and sent another daughter a monthly check for $50 out of the Holmes and Troost receipts. She kept a complete and accurate record of the amounts of the receipts from the two properties which were deposited in the Donner account and saw to it that only those amounts and none of the partnership (transfer company) funds were used to pay anything due on or in connection with the Troost property. Those records were not in her possession at trial time. They had disappeared from the premises of the transfer company (which was operated out of a portion of the Troost property) on the day defendant left.

Some of plaintiff's witnesses testified that defendant had stated during the time he lived in the Troost property that the home was his wife's and that he had no interest in it. Others testified to the fact of paying rent to plaintiff rather than to defendant and that defendant did nothing to improve the property while plaintiff worked diligently at it.

We now state defendant's evidence as to the circumstances surrounding the acquisition of the Troost property and its use and status thereafter. Defendant and plaintiff discussed the acquisition of the property and agreed that "we'd buy the house together, and pay for it together, and build the place up and make something out of it." Defendant did not suggest that he would be embarrassed if his name were not on the deed, or ask his wife to include his name in the deed for that reason, or ever agree to reconvey or to hold the property and do, with respect to it, whatever plaintiff asked him to do. Defendant said at one place in his testimony that the $6,000 down payment was made from funds which his wife had, some amount from the partnership account, and an amount which she was to borrow from her daughter and which latter amount he and his wife were to repay. At another place in his testimony he said that his wife furnished the $6,000 and that he did not furnish any part of it. (There was no evidence that any part of the $6,000 had been borrowed by plaintiff from her daughter and, at best, defendant's statement that some of the down payment came from partnership funds was so indefinite as to amount or other details as to be lacking in probative force.)

Defendant did not discuss with plaintiff the amounts of the monthly payments due on the note secured by the deed of trust but he did know at one time how much

they were but at trial time did not remember, and did not remember the amount received as monthly rents from the Troost property. Defendant's testimony supported the inference that his view was that the checks which plaintiff wrote on the partnership account to make the monthly payments on the $8,000 balance due on the house represented plaintiff's and defendant's joint income from the Troost rents and the transfer business. Defendant had never discussed with plaintiff the title to the property from the time the deed was signed until after their separation. He worked long and hard in the remodeling and repairing of the premises and paid from time to time, from receipts from the transfer business, for various materials that went into the property.

If he ever referred to the property as being his wife's, he did so in a joking way. He did tell the tenants that she would collect the rents because she was to do so and because she kept the books on the house as well as the books of the transfer business. When defendant left the Troost home in March 1954, he took the partnership trucks and checked out all the money in the partnership account, the sum of $671.85. He intended to take all the partnership records with him, but all he found were some cancelled checks and bank statements. Some of defendant's witnesses testified that he worked on the property and that it was referred to as "our" property.

■ The testimony, we think, satisfactorily establishes the proposition that plaintiff, from her own separate funds, supplied the $6,000 down payment on the property. At one point defendant admitted that plaintiff furnished the entire $6,000 and that he furnished no part of it. As noted, defendant's testimony that part of the $6,000 was to be borrowed by plaintiff from her daughter and that some undisclosed amount in the partnership account was used as part of the down payment, was so vague and indefinite as to furnish no sound basis for any finding of fact. Plaintiff admitted, however, that she directed that defendant's name be inserted in the deed (albeit the parties do not agree upon the circumstances under which plaintiff so directed). Thus, the evidence shows that plaintiff furnished the entire consideration for the $6,000 down payment, directed that her husband's name be inserted in the deed as a cograntee with her, and that both parties signed the note (and deed of trust securing it) for the $8,000 balance. Those facts would, but for defendant's further testimony, raise a rebuttable presumption that the wife intended that the tenant-by-entirety interest conveyed to defendant was a gift to him. Gaede v. Smith, 354 Mo. 738, 190 S.W.2d 931, 932 [1]; see annotation, 43 A.L.R.2d 917. In this case, however, no such presumption can arise or exist because, as noted, defendant testified that he and his wife were to buy, and, the inference is, did buy, the property jointly and were to and did pay for it jointly. It is clear, therefore, that defendant did not at the trial and may not now rely upon a presumption of gift. Consequently, we need not deal with the question, argued by defendant, whether plaintiff satisfactorily rebutted such a presumption.

In our view, the only remaining fact questions are whether plaintiff adduced clear and unequivocal testimony sufficient to convince the trial chancellor and this court that defendant made the representations as claimed by plaintiff and, if so, whether his name was inserted in the deed solely as a result of those representations, and the subsidiary question of whether only the money from the rents of the Troost property and from plaintiff's share of the proceeds of the sale of the Holmes property and the balance of accumulated funds from the beauty shop operation were used to pay the purchase price balance and to pay for the repairs and remodeling of the Troost property.

There were no stated findings of fact or conclusions of law but it is apparent from the judgment that the trial chancellor found that plaintiff's evidence was convincing in

those respects. It is further apparent that those findings had to be based almost entirely upon the trial chancellor's judgment as to the credibility of plaintiff and defendant. That is because the decisive factual issues could be properly determined only by first deciding whether plaintiff or defendant was accurately relating the circumstances under which the property was acquired and, particularly, how it came to pass that defendant's name appeared in the deed as a cograntee.

■ We review this equity suit de novo, weigh the evidence, and reach our own conclusions. "Where, as here, however, there exists an irreconcilable conflict in the evidence on the essential fact issue involved, depending for determination on the credibility of witnesses, a situation prevails wherein the application of the rule of deference to the findings and conclusions of the trial chancellor is especially appropriate and necessary." State ex rel. Taylor v. Anderson, 363 Mo. 884, 254 S.W.2d 609, 615 [7–10].

■ Our independent review of the entire record convinces us that we should defer to the conclusion which the trial chancellor necessarily reached, viz., that plaintiff's testimony was true as to the circumstances under which the property was acquired, including the reason why defendant's name was inserted in the deed, and that also true was plaintiff's testimony as to the manner in which the balance of the purchase price was paid. Accepting plaintiff's testimony on those essential fact issues as true, we are of the further opinion that on the whole record plaintiff's proof was clear and convincing to the effect that plaintiff furnished the entire purchase price for the Troost property, and that she directed that defendant's name be inserted in the deed as a cograntee with her as a direct result of the representations and promise of defendant that he would make no claim to any interest in the property and would thereafter reconvey or otherwise act in connection with it in any manner plaintiff directed.

■ If defendant's promise to, in effect, hold the undivided half interest in the property conveyed to him in trust for plaintiff and to reconvey the land to her upon request was a representation of a present intention to perform a promise which he did not then intend to perform and thus was a false representation of fact, or if, at the time of the conveyance, a relationship existed between plaintiff and defendant which justified plaintiff in placing confidence in the belief that defendant would act with respect to a property interest as he said he would, then in either of those events a constructive trust should be imposed. Basman v. Frank, Mo., 250 S.W.2d 989, 993 [2] [3]; Thieman v. Thieman, Mo., 218 S.W.2d 580, 584, 585 [8] [9]. It has been said that the "subsequent refusal of the transferee to perform his promise, is evidence, though not conclusive evidence, that at the time of the transfer he did not intend to perform his promise." A.L.I., Rest., Restitution, § 182(a), pp. 732, 733. It is probable in this case that the entire evidence, considered in connection with the fact that defendant did repudiate his agreement, justifies the inference that defendant did not intend to perform his promise when he made it and that his inducing statements were thereby fraudulent and made for the purpose of obtaining an undivided half interest in the property.

■■ We need not, however, determine that question or place our decision herein upon that proposition. There was a husband-wife relationship between plaintiff and defendant at the time the deed to the property was executed. The husband-wife relationship is such that one spouse is justified in placing confidence in the belief that the other spouse will act with respect to a property interest in the manner which he or she at the time promises to do. It is true that the fact alone of a husband-wife relationship does not establish a "fiduciary"

relationship within the meaning of a "confidential or fiduciary" (used synonymously) relationship, such as, for example, that relationship necessary to raise an inference of undue influence. Snell v. Seek, 363 Mo. 225, 250 S.W.2d 336, 342 [8]. It is equally true, however, that a proper and usual husband and wife relationship in and of itself denotes mutual confidence and is in that sense a confidential relationship. Snell v. Seek, supra. In other words, the husband-wife relationship in a given case may not measure up to a "fiduciary relationship" in the sense that one spouse transferring property to the other had customarily relied upon the judgment or advice of the transferee-spouse in business matters, but the husband-wife relation, standing alone, justifies one spouse in confidently believing that the other will act toward a property interest in the manner he has promised. "In these cases it is held that the constructive trust will be imposed even though at the time when he acquired the property the transferee intended to perform his promise and was not therefore guilty of fraud in acquiring it; and even though the transferee did not take improper advantage of the confidential relation in procuring the transfer and was not therefore guilty of using undue influence. The abuse of the confidential relation in these cases consists merely in his failure to perform his promise. A constructive trust is imposed even though there is no fiduciary relation such as that between attorney and client, principal and agent, trustee and beneficiary; it is sufficient that there is a family relationship or other personal relationship of such a character that the transferor is justified in believing that the transferee will act in his interest." Scott on Trusts, § 44.2, pp. 318–320; and see again, Basman v. Frank, supra, 250 S.W.2d 993 [3].

Our recent cases of Davis v. Roberts, Mo., 295 S.W.2d 152, and Jacobs v. Jacobs, Mo., 272 S.W.2d 185, on which defendant has placed reliance, deal exclusively with the question of resulting trusts. We have examined those cases and while the fact

situations in them are in some respects similar to the facts in the instant case, we are of the opinion that nothing there said militates against the result here reached on the constructive trust theory.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.