**Mary Allene MARCH, Respondent,**

v.

**Arnold Laclede GERSTENSCHLAGER, Individually, Arnold Laclede Gerstenschlager, as Trustee for Plaintiff, Mary Allene March, St. Francois County Building and Loan Association, a Corporation, and J. O. Swink, as Trustee under Deed of Trust for St. Francois County Building and Loan Association, a Corporation, Appellants.**

No. 53488.

Supreme Court of Missouri,
Division No. 1.

Jan. 13, 1969.

James H. Connor, Jr., St. Louis, and Harold L. Satz, Theodore D. Ponfil, Satz & Ponfil, St. Louis, for respondent Mary Allene March.

Robert A. McIlrath, Flat River, for appellants.

HIGGINS, Commissioner.

Action in equity to establish a trust in real estate.

Respondent contends that this appeal should be dismissed because it contains allegations of error which were not preserved for review by a motion for new trial; however, under Civil Rule 73.01(d), V.A.M.R., no motion for new trial is necessary for an appellate review of a court-tried case, Russell v. Russell, Mo., 427 S.W. 2d 471, 475 [1, 2], and this case is thus for review in the manner specified by Civil Rule 73.01(d), to resolve, from a consideration of all the admissible evidence, "the question of the sufficiency of the evidence to support the judgment," and the judgment "shall not be set aside unless clearly erroneous." Civil Rules 73.01(d) and 79.03.

Plaintiff alleges: that she was married to Arnold Laclede Gerstenschlager, July 3, 1938, and divorced from him June 14, 1950; that St. Francois County Building & Loan Association claims an interest in the real estate under a deed of trust executed to it by Arnold Laclede Gerstenschlager, and that J. O. Swink is named trustee in the deed of trust; that on May 18, 1946, during their marriage, plaintiff and Laclede acquired the real estate as tenants by the entireties; that, subsequent to the divorce, Laclede, on September 5, 1950, executed a quitclaim deed to plaintiff conveying all his interest in the real estate to her; that on May 23, 1952, plaintiff deeded the real estate to Arnold Laclede Gerstenschlager to hold in trust and confidence for her pending her divorce from her then husband, Paul Jones Rivers, and that Laclede accepted the deed and title as trustee and straw party for plaintiff until the Rivers divorce was completed; that he agreed and promised to reconvey the real estate to her upon demand, and that his promises were fraudulent, untrue, and made with intent that she rely on them to her damage and loss of her real estate; that he has refused to reconvey the real estate upon her numerous demands.

Under the statute of frauds, Section 456.-010, V.A.M.S., "All declarations or creations of trust or confidence of any lands * * * shall be manifested and proved by some writing signed by the party who is * * * enabled to declare such trusts * * * or else they shall be void * * *." An exception is provided in Section 456.-030, V.A.M.S., "When any conveyance shall be made of any lands * * * by which a trust or confidence may arise or result by implication of law, such trust or confidence shall be of like force as the same would have been if the act had not been made." Appellants say that if a trust is to be "sifted" from the evidence adduced in support of the petition, it is a trust

arising by implication of law, and they recognize that "(A)n exception to the Statute of Frauds is allowed in order to permit parole (sic) testimony to establish an implied trust."

The rule respecting the sufficiency of evidence to establish an implied trust has been variously stated: " * * * it is well settled that to establish an implied trust, whether it be a resulting or a constructive trust, 'an extraordinary degree of proof is required.' * * * The rule is variously stated in the cases as, that to establish such trusts 'the evidence * * * must be so cogent, clear, unequivocal, and positive as to banish doubt from the mind of the chancellor,' * * * [t]he proof must be 'so clear, so unequivocal, so cogent, and impelling as to exclude every reasonable doubt from the chancellor's mind,' * * * and a preponderance of the evidence is not sufficient; the evidence must be so 'unquestionable in its character, so clear, cogent, and convincing that no reasonable doubt can be entertained of its truth.'" Norton v. Norton, Mo., 43 S.W. 2d 1024, 1032 [6]. See also Ferguson v. Robinson, 258 Mo. 113, 167 S.W. 447, 453; Little v. Nettee, 338 Mo. 1223, 93 S.W.2d 1000; Suhre v. Busch, 343 Mo. 679, 123 S.W.2d 8; Scholle v. Laumann, Mo.App., 139 S.W.2d 1067; Decker v. Fittge, 365 Mo. 139, 276 S.W.2d 144, 147 [1].

Plaintiff's petition sought establishment of a trust in the real estate in question on the theory that Arnold Laclede Gerstenschlager falsely misrepresented to her that if she conveyed the property to him he would hold it for her and reconvey upon her demand. The trial court found that Arnold Laclede Gerstenschlager had misrepresented his intention to reconvey and that he was, therefore, a trustee of the real estate for plaintiff and ordered him to reconvey the property to plaintiff.

Although some confusion has been evident in definition and constituent elements of a constructive trust, Swon v. Huddleston, Mo., 282 S.W.2d 18, 25, 55 A.L.R.2d 205, "(t)hey are not technical trusts and in imposing or declaring a constructive trust a court of equity merely uses the machinery of a trust to prevent fraud or provide a remedy in cases of fraud, actual or constructive, by making the person who has wrongfully acquired property, or has acquired property under such circumstances as make it inequitable for him to retain it, a trustee for the person defrauded or injured by such fraudulent or wrongful conduct. * * * a constructive trust is the method or formula used by a court of equity as a means of effecting restitution or of rectifying a situation where, as the result of the violation of confidence or faith reposed in another, or fraudulent act or conduct of such other, the plaintiff, who seeks the aid of equity, has been wrongfully deprived of, or has lost, some title, right, equity, interest, expectancy, or benefit, in the property which, otherwise and but for such fraudulent or wrongful act or conduct, he would have had. * * * In most cases * * * the object and purpose of a court of equity in imposing a constructive trust is 'to restore to plaintiff property of which he has been unjustly deprived and to take from the defendant property the retention of which by him would result in a corresponding unjust enrichment of the defendant; in other words the effect is to prevent a loss to the plaintiff and a corresponding gain to the defendant, and to put each of them in a position in which he was before the defendant acquired the property.' Restatement of the Law of Restitution, p. 643." Suhre v. Busch, supra, 123 S.W.2d l. c. 15–16 [1–4]. See also Basman v. Frank, Mo., 250 S.W.2d 989, 993 [2]; Musser v. General Realty Co., Mo., 313 S.W.2d 5, 9. Many cases say that such a trust must be based on a fraud, actual or constructive; others proceed upon the theory of unjust enrichment or of an unfair or wrongful holding, without any proof of fraudulent intent. Swon v. Huddleston, supra.

There is clear, cogent, and convincing evidence within the meaning of these authorities to prove plaintiff's petition and to show that prior to and at the time plaintiff deeded the property to Arnold Laclede Gerstenschlager he represented and promised that he would hold the property for her until after her pending divorce, that he had no intention of reconveying, that he refused to reconvey, and that plaintiff conveyed her property in reliance upon his false representation to her injury and damage.

It is undisputed: that plaintiff and Arnold Laclede Gerstenschlager were married July 3, 1938, and divorced June 14, 1950; that they acquired the real estate in question as tenants by entirety May 18, 1946; that he conveyed all his interest in the property to her September 5, 1950; that the conveyance in issue was executed and delivered to him May 23, 1952, when divorce proceedings were pending between plaintiff and Paul Rivers; that plaintiff subsequently divorced Paul Rivers; that Arnold Laclede Gerstenschlager did not reconvey the property; that the only interest of St. Francois County Building & Loan and J. O. Swink, trustee, is by virtue of a deed of trust, Account No. 2113–286, placed on the property by Laclede, which paid prior notes secured by deeds of trust executed by plaintiff and Laclede, and that interest has been recognized and protected by the decree.

The evidence on the disputed issues is also of the necessary substance. According to plaintiff, she and Arnold Laclede Gerstenschlager paid $1,300 for the property and improved it by construction of a restaurant and four rental cottages. The improvements were financed by $10,000 of plaintiff's own money, a loan of $10,000 from St. Francois Building & Loan, Account No. 1586, and a loan of $2,500 from B. H. Jennings, both secured by deeds of trust. No disposition of the property was made at the time of the Gerstenschlager divorce June 14, 1950, which was awarded to Arnold Laclede Gerstenschlager on his cross petition. Plaintiff was then represented by an attorney but she was not present in court when the divorce was granted; Laclede was represented by his present attorney, Mr. Robert A. McIlrath. On July 1, 1950, plaintiff and Laclede executed a settlement of property rights prepared by Mr. McIlrath, and on September 5, 1950, Laclede executed and delivered a quitclaim deed to plaintiff conveying all his right, title and interest in the property to plaintiff. Plaintiff married Paul Rivers December 26, 1950, and divorced him June 6, 1952. While this divorce was pending, plaintiff became worried that Mr. Rivers could "give her trouble" about the property. She consulted with Mr. McIlrath about the status of the property at a time when she was hiding from Mr. Rivers to avoid further physical abuse. Mr. McIlrath explained the rights of Mr. Rivers and she understood his advice to be to "put the deed into somebody's name that I trusted that would return it to me after the divorce from Rivers." She discussed such transaction with Laclede on several occasions. The first discussion was in March or April, 1952, at her home on the property with her father, brother, Charles Henry Biri, and Mildred Louise Moody (now Brown) present. "We discussed putting it (the real estate) back into Laclede's name to hold it in trust for me until I got the divorce from Rivers. * * * He (Laclede) said he'd hold the property in trust for me until after the divorce—I got the divorce from Rivers. Then he'd redeed it back to me." They had other conversations prior to the transfer "say like maybe on the street some place, I'd ask him, you know, if he was sure he'd turn the property back to me after the divorce was granted, and he said he would." As a result of these conversations plaintiff went to Mr. McIlrath's office where his secretary prepared the deed conveying the property to Laclede. "I handed it to him at my house, the next day after it was made." No consideration was paid. Laclede recorded the deed June 4, 1952. Sometime in June after the Rivers divorce was granted June 6, 1952, Laclede

and plaintiff were at her house on the property. "I asked him to make the deed back to me now since the divorce was granted. * * * He said no." She made other demands, one of which was "in about October or November in '52. I was living on Eads Avenue (St. Louis) * * * with Mildred Louise Brown now, and Laclede came in and I asked him again. And every time I met him, I asked him." On this occasion, "I asked him if he'd made the deed back to me now. He said no, he'd been a damn fool one time and he wouldn't be again. * * * I took and threw the dish rag in his face and run." Altogether she demanded a deed fifteen or twenty times. She filed her first suit for the relief granted here July 8, 1955, in St. Louis County. It was tried April 1, 1957, and resulted in a decree favorable to her. Upon appeal, the supreme court, April 17, 1959, ordered that petition dismissed without prejudice because the Circuit Court of St. Louis County had no jurisdiction over a suit involving title to realty in St. Francois County. March v. Gerstenschlager, Mo., 322 S.W.2d 743. This suit was filed May 6, 1959. The Honorable J. O. Swink disqualified himself and the Honorable J. Ben Searcy was assigned to the case. The case was dismissed March 18, 1965, for failure to prosecute but, upon motion stating no knowledge of the docketing or dismissal, the court, April 15, 1965, sustained the motion and reinstated the case on the active docket. While the Rivers divorce was pending, plaintiff made a payment May 17, 1952, of $125 on Building & Loan Account No. 1586 and, after the divorce and delivery of the deed, she made a payment June 9, 1952. Plaintiff operated the restaurant, the Royal Cafe, with Laclede prior to the divorce and by herself after the divorce and until the deed to Laclede, after which he took the receipts and rentals from the cottages. She was aware that Mr. Jennings advertised a foreclosure sale but he withdrew it when she paid $309 interest.

Mildred Louise Brown (formerly Moody) recalled an occasion in May, 1952, while she was living in one of the cottages when Laclede came to visit Allene. "She told him that she was afraid that Rivers was going to give her trouble about the place and they talked it over * * *. She was going to make the deed over to him so that Paul couldn't bother her about it until after the divorce from Paul." She saw plaintiff deliver the deed to Laclede "right after that. * * * he said he would take care of it for her and he didn't see Rivers getting any of it. * * * I heard him say he didn't intend for her other husband to get any of it but he would see that she got it." She heard them talk about the transaction serveral times after the divorce and heard plaintiff make numerous demands for return of her property. In July or August, 1952, " * * * they just talked about the property and she wanted to know when he was going to deed it back to her * * *. He said give him time, he didn't intend for Rivers to get any of it." Early in 1953 Mrs. Brown moved to St. Louis and, on several occasions in 1953, plaintiff and Laclede were in her house and she heard them discuss the transaction and heard plaintiff's demands for a deed.

Arnold Laclede Gerstenschlager stated that he deeded the property to plaintiff following the divorce because it had "just been so much trouble and aggravation, I wanted to get out of all of it and make a new start." He denied all conversations relative any agreement with plaintiff to hold the property for her pending a divorce from Paul Rivers. He got the deed to it from the mail because "she told me that Mr. Jennings was foreclosing on his part of it, and she had talked to her father and also her brother, and they couldn't do anything about it, and she wanted to know if I could, and I said, 'Well, I don't know. I know I am working, and I feel I've got a good credit, and I believe that I can handle it. * * * she talked to me about getting her name off of it (the mortgage indebtedness)." While he held the title

he executed a deed of trust to St. Francois Building & Loan on the property to secure repayment of money used to pay the original deed of trust to St. Francois and the balance due Mr. Jennings. While he had the property he applied rentals to the debts.

B. H. Jennings stated that for a time during ownership of the premises by Laclede he collected rents and applied them to the indebtedness. According to him, it was Laclede who paid the interest to stop his foreclosure sale.

Robert A. McIlrath stated that he was plaintiff's lawyer in her divorce proceedings against Paul Rivers. He denied telling plaintiff that Rivers had an interest in her property. He told her that if, prior to the divorce, she died and left him surviving, he would have a dower interest in her property. "* * * she asked me to make a warranty deed * * *. And my girl wrote it up and I checked the description * * *."

 The evidence presents a case of conflicting oral evidence, and the trial court chose to believe in plaintiff and her witnesses, accepting her theory of the case and her evidence showing a promise to reconvey real estate running from Arnold Laclede Gerstenschlager to her; and although review is de novo, deference should be given to the trial court's findings and conclusions on conflicting evidence. Ignoring, then, defendants' evidence insofar as it conflicts with plaintiff's, the evidence is unequivocal in establishing the alleged oral agreement and the failure and refusal of Laclede to perform. His refusal is evidence tending to show that he did not intend to perform when he made the agreement and his statement that "he'd been a damn fool one time and he wouldn't be again" lends further support to the finding that he misrepresented his intention to reconvey to plaintiff. This justified a constructive trust on the real estate conveyed pursuant to the misrepresentation, because "'(a) state of mind, an existing purpose, may be misrepresented and thus constitute a misrepresentation of fact.'" Thieman v. Thieman, Mo., 218 S.W.2d 580, 585 [8]; Wallach v. Joseph, Mo., 420 S.W.2d 289, 295 [4, 5]; and, for a similar case, see Musser v. General Realty Co., supra.

Judgment affirmed.

HOUSER, C., not sitting.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.