Ray TIMMERMAN, Respondent,

v.

Ona ANKROM and Daisy Ankrom, Appellants.

No. 56410.

Supreme Court of Missouri, Division No. 1.

Dec. 11, 1972.

Bear, Hines and Thomas, Robert Hines, Columbia, for respondent.

James C. Butcher, Columbia, for appellants.

LAURANCE M. HYDE, Special Commissioner.

Action for specific performance of a contract to sell 65 acres of land in Boone County. We have jurisdiction because title to real estate is involved, § 3, Art. V, Constitution of Missouri, 1945, V.A.M.S., and notice of appeal was filed in this court before January 1, 1972. The trial court ordered specific performance on payment of $26,000 for defendants with deductions for court costs, land taxes and an abstract of title if it is not furnished by defendants. Defendants have appealed from this judgment. We affirm.

Plaintiff has filed a motion to strike part of defendants' brief concerning plaintiff's ability to perform the contract at the time of the trial on the ground that it was not mentioned in defendants' motion for new trial. This case was tried by the court; and as we said in March v. Gerstenschlager, Mo.Sup., 436 S.W.2d 6, 7: "under Civil Rule 73.01(d), V.A.M.R., no motion for new trial is necessary for an appellate review of a court-tried case, Russell v. Russell, Mo., 427 S.W.2d 471, 475 [1, 2], and this case is thus for review in the manner specified by Civil Rule 73.-01(d), to resolve, from a consideration of all the admissible evidence, 'the question of the sufficiency of the evidence to support the judgment,' and the judgment 'shall not be set aside unless clearly erroneous.' " See also Journal of The Missouri Bar, Vol. 26, No. 2, pp. 71–73. The motion to strike is overruled.

Defendants' main claim is that the contract of sale they signed should be held unenforceable because the real estate agent Dudley who procured their signatures on it was representing plaintiff without disclosing this to them, citing Cossairt v. Reich, Mo.Sup., 370 S.W.2d 291; Harry M. Fine Realty Co. v. Stiers, Mo.App., 326 S.W.2d 392; Landau v. St. Louis Public Service Co., Mo.Sup. En Banc, 273 S.W.2d 255; McElroy v. Maxwell, 101 Mo. 294, 14 S.W. 1; 3 C.J.S. Agency § 141, pp. 15–18; 12

Williston on Contracts, 3d Ed., § 1532, p. 660. See also 12 Am.Jur.2d Brokers § 67, p. 822, § 87, p. 840; American Law Institute Restatement of Agency 2d §§ 387, 389, 391, 394. As we said of a dual agent in Blakeley v. Bradley, Mo.Sup., 281 S.W.2d 835, 839: " 'where he attempts to act for both sides, he is confronted with the impossible task of securing for each the most advantageous bargain possible,' " see annotation 26 A.L.R.2d 1307.

Defendant Ona Ankrom was 72 years of age at the time the contract was signed and had owned his land since 1947. His education ended in the eighth grade and he was not in good health. His wife, whom he married about 9 years before the contract was signed, owned a house in Columbia where she lived because she was employed in the laundry of the Daniel Boone Hotel. Defendants' land was about 7 miles east of Columbia adjoining a subdivision known as Lake Chateau owned by Bill Castle and Duane Pemberton on State Highway WW. There was a 40-acre lake on the subdivision and three new houses had been built near the lake on streets laid out on the tract. There were two other houses beyond them nearer defendants' land, one of which was a new house. Mr. Ankrom kept a few cattle, sheep and hogs and lots of chickens on his land.

Kenneth Dudley, a real estate salesman, had heard the Ankrom land might be for sale and took a contract to Mr. Ankrom signed by Bill Castle, one of the owners of the Lake Chateau subdivision, which provided for payment of $24,000 for his land. Mr. Dudley was accompanied by John Westlund, an officer of the real estate firm by which Mr. Dudley was employed. Mr. Ankrom told them he would not consider this offer and would not put a price on it. Mr. Ankrom said in his first contact with Dudley he told him: "I didn't care anything about selling the place, hadn't thought anything about it, but if I could—unless I could find something I liked better, what I said, I'd consider it." Dudley said Mr. Ankrom indicated he

would rather trade for a duplex. Mr. Dudley said two or three days later Mr. Ankrom came in his office and asked if he had found any duplexes for trade, but then said he had changed his mind and would rather have an older house with a smaller acreage. Dudley said he set up an appointment with Mr. Ankrom to look at small tracts but he later called and said he could not come in that day. Dudley next saw Mr. Ankrom when he went to his house with a contract signed by plaintiff which provided for a payment of $25,000 for his land. This was about two weeks after he had gone there with the contract signed by Castle. Dudley said plaintiff had seen him in a cafe in Columbia and told him he had driven by the farm and might be interested in it. Plaintiff indicated he would pay $25,000 for it and signed a contract to pay that amount. Plaintiff told him to pick up the signed contract at the Columbia National Bank where he was trying to arrange a loan. Mr. Pemberton, one of the owners of the adjoining subdivision, was an officer of the bank and arranged for plaintiff's financing. The bank had new ownership prior to the trial and Mr. Pemberton, then living in Springfield, did not testify.

Dudley said when he went out with the contract signed by plaintiff he spent two or three hours with Ankrom and finally said "what would you have to have for the farm?" He said Ankrom said "I'll have to net $25,000." The contract for the $25,000 selling price provided for Ankrom to pay a commission of $1,250. Dudley changed the contract with a pen to make the $25,000 typed figure $27,000 and the commission $1,350. These changes then were initialed by Ankrom and later by plaintiff. The contract was dated March 28, 1969. This contract, which was on a form designated as "approved by counsel for the Missouri Real Estate Association," provided for the buyer to pay $1,000 escrow money, which was to be held by the real estate company. It further provided: "This contract is given subject to the buyer's ability to obtain a loan or loans in the amount of $26,000 and payable as follows: in terms that suit the buyer and in the event the buyer is unable to obtain such loan or loans within 30 days hereof then this contract shall be considered null and void and the money above deposited shall be returned to the buyer." The closing date was stated as "on or before July 1, 1969," but the seller was not required to give possession until April 1, 1970. No issue is raised as to the terms of the contract. The next morning, March 29, 1969, Dudley procured the signature of Mrs. Ankrom on the contract. There is considerable controversy about how that was done but Dudley had phoned Mr. Ankrom that morning and he told him where she lived.

◼ Plaintiff claims that Ankrom made Dudley his agent when after refusing the Castle offer he said he might trade for other property and that this amounted to a listing implied by law, citing Hoover v. Whisner, Mo.App., 373 S.W.2d 176. In any event, Ankrom did acknowledge Dudley as his agent when he signed the contract agreeing to pay him a commission. However the issue raised by defendants is: Was Dudley also actually the agent of plaintiff and acting for him in obtaining a contract from defendants without their knowledge and consent to a dual agency?

◼ Dudley testified he had been told by a neighbor Vemer that defendants' farm might be for sale before he talked with Castle about it; that Castle told him what he would give for the farm; and that it is not uncommon for a buyer to sign a contract to be taken to the prospective seller. Dudley also said that plaintiff approached him on buying the farm and told him what he would give for it; and that he made up the contract and left it at the bank because plaintiff was to get the money there and wanted Pemberton to look at it. Dudley further said after Ankrom had signed the contract with the increased figures he met plaintiff at the bank the next morning and

that plaintiff decided to sign it after considering it for 15 or 20 minutes. He said Ankrom came in about two weeks after the contract was signed and "wanted to know if the fellow could get the loan." Dudley said he told him he didn't know yet "that we hadn't received the loan commitment." Ankrom was notified on April 20th that plaintiff's loan had been obtained and that he was ready to close. On April 26th Mr. Ankrom came in and said "he didn't know whether he wanted to go through with it or not." He said "he hadn't sold it high enough." He never did deliver his abstract of title for examination. He said he thought the land was worth $500 per acre.

Plaintiff said he heard Dudley had a farm for sale, saw him in a restaurant in Columbia, told him he might be interested and agreed to pay around $25,000. He said he wanted a farm to move his children to the country so they could "get some freedom." He said: "I was born and raised on a farm myself and just wanted out in the country"; and "I have been trying to buy a farm around close to town for sometime." This farm was on a blacktop road making it possible for plaintiff to get out to answer calls at night. The overflow water from the lake goes down the middle of the farm which plaintiff said would require waterways to be built and he planned to put in improved pasture there.

There is no direct evidence to show that Dudley was representing plaintiff as agent for him. As said in Smith v. Piper, Mo.App., 423 S.W.2d 22, 26: "By the very nature of a broker's work he must deal with both buyers and sellers." It is only when he deals *for* both buyer and seller without disclosing that fact that the transaction is deemed constructively fraudulent in equity. See 81 C.J.S. Specific Performance § 43, p. 523; 2 Mechem on Agency, 2nd Ed., § 2139, p. 1715. The trial court in finding for plaintiff necessarily found against defendants' claim of a dual agency as that issue had been raised in defendants' answer. Rule 73.01(d) states "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Defendants also claim the contract was obtained by means of undue influence, misrepresentation, surprise and sharp practices. Defendants' brief says that when Mr. Ankrom signed the contract he did not realize it was a contract, was not advised to discuss the matter with his wife and was not given any advice as to the value of the property. However, Mr. Ankrom not only signed the contract but initialed all changes to make it provide for $2,000 greater purchase price. He also had previously turned down a contract for a smaller price and had come to Dudley's real estate office to talk about a trade or making some other transaction for his land. Under all the circumstances it surely is reasonable to find that he knew he was signing a contract to sell the land. Defendants further claim misrepresentation in obtaining Mrs. Ankrom's signature the next day after Ankrom signed it. However, it appears that Dudley telephoned Mr. Ankrom that morning and got from him his wife's address. The testimony of Mrs. Ankrom and witness Peggy Franklin who was present when Dudley came there with the contract differs from Dudley's testimony as to whether Dudley told Mrs. Ankrom that Mr. Ankrom wanted her to sign the contract. However, an experienced trial judge saw the parties and witnesses and heard their testimony so we find no reason to refuse to accept his finding for the plaintiff.

As to defendants' claim that plaintiff did not show at the trial that he had financing to close, it appears that plaintiff did not have the loan commitment originally made because the bank had new ownership. On cross-examination plaintiff testified: "I have some money and I know where I can get some loans * * * I can tender the money today." In answer to other questions he said he did not have it in the bank today and did not have a loan commitment today but said "I can get

it." Plaintiff was a partner in a "refrigerators and air conditioners and a heater service company." He owned his home and a duplex in Columbia and owned another duplex with his mother who owned a farm in Iowa from which she received $5,000 annually, as to which plaintiff said "if I needed it I could use it." The court's decree required plaintiff to deposit with the clerk $26,000 within ten days after receiving defendants' abstract showing marketable title. Defendants are protected by this decree from being required to deposit a deed or have title pass until the purchase price is deposited with the circuit clerk.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the Court.

HOLMAN, P. J., SEILER, J., and FINCH, C. J., concur.

BARDGETT, J., not sitting.