**Robert D. MURPHY and Norma Sue Murphy, Plaintiffs-Respondents,**

v.

**Bill E. OLDS, and Myrna J. Olds, Defendants-Appellants,**

**Safety Federal Savings and Loan Association, Defendant.**

**No. KCD 26454.**

Missouri Court of Appeals, Kansas City District.

April 1, 1974.

Donald L. Mason, Kansas City, for defendants-appellants; Sheridan, Sanders, Carr, White & Mason, Kansas City, of counsel.

Thomas M. Sullivan, Downey, Sullivan & FitzGerald, Kansas City, for plaintiffs-respondents.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

SHANGLER, Judge.

The plaintiffs husband and wife brought their petition against defendants husband and wife for partition of real estate alleged to have been owned in partnership as tenants in common but titled in the defendants. The trial court decreed partition, designated the judgment final for purposes of appeal, and reserved the remaining counts of the petition for future determination.

The judgment of the trial court was predicated upon these findings of fact: An agreement was struck between plaintiff Robert D. Murphy and defendant Bill E. Olds whereby they would acquire a house recently damaged by fire, reconstruct it, and divide the profit from its sale. Specifically, it was agreed that plaintiff Robert D. Murphy and defendant Bill E. Olds would obtain a construction loan of $25,000 from which the real estate would be purchased [with title taken initially in the names of plaintiffs Murphy] and the cost of construction and remodeling paid. It was agreed that plaintiff Robert D. Murphy would supervise the construction and remodeling of the house, that defendant Bill E. Olds would attend to its sale, that Murphy would join in the conveyance, and that from the purchase price, the construction loan was to be repaid and any profit or loss equally shared between them. In pursuance of this agreement, the real property was acquired from a Mr. Bell and the purchase price paid out of the proceeds of the construction loan to Robert D. Murphy. The remaining funds from the construction loan, $12,500, were spent on remodeling the premises. The residence was substantially complete by September 10, 1968, but there were no immediate buyers. Defendant Bill E. Olds and plaintiff Robert D. Murphy agreed to delay the sale of the house for at least six months so that the sale would qualify as a capital gain under the Internal Revenue Law. Accordingly, defendant Bill E. Olds and plaintiff Robert D. Murphy agreed that the title to the tract be placed in the names of defendants Olds, husband and wife, who were to obtain a permanent loan from the Safety Federal Savings and Loan Association [joined in this litigation as a nominal defendant] in the amount of $26,000 from which the balance due on the construction loan would be repaid, and that defendants Olds were to live in the residence for six months and maintain the payments on the permanent loan, took title in their names and entered occupancy of the premises in September of 1968. The defendants Olds, however, have remained in possession ever since and have enjoyed the occupancy and use of the premises, including the rentals and have refused to accord plaintiff Murphy the benefit of his

interest in the profit which could be realized from the sale of the house [found as of the date of trial to have the fair market value of $45,000].

The court found that the agreement between plaintiff Robert D. Murphy and defendant Bill E. Olds was one of trust and confidence and gave rise to a fiduciary relationship between them. Plaintiff Robert D. Murphy was declared to be the owner of an undivided one-half interest in the tract and improvements and that plaintiff was entitled to partition of the property. The conduct of defendant Bill E. Olds was found to be imputable to his wife, defendant Myrna J. Olds for whom he acted as agent, and judgment for partition was rendered against her as well.

On this appeal, although defendants tacitly concede that there was disputed evidence to support the finding of the trial court that a partnership venture subsisted between plaintiff Robert D. Murphy and defendant Bill E. Olds for the sharing of profits from the purchase, reconstruction and resale of real estate, they contend the evidence was not sufficient to support the pleaded theory for partition—that defendants fiduciaries verbally agreed to hold title to the real estate for the use and benefit of plaintiff—since the warranty deed by which plaintiffs conveyed the property to defendants was absolute in terms and a trust by parol may be engrafted on a legal title to real estate only by proof so clear, cogent and convincing as to exclude every reasonable doubt from the mind of the Chancellor.

■ The findings and decree of the trial court must be understood as a determination of a constructive trust in land in favor of plaintiff arising from the breach of an oral agreement between persons in a fiduciary relationship to share the increment in the value of the land brought about by their joint efforts. And, it is the established principle, as contended by defendants, that "[t]he insecurity of titles and the temptation to perjury . . .

imperatively require that trusts arising by operation of law should not be declared upon any doubtful evidence." Long v. Conrad, 42 S.W.2d 357, 362[6] (Mo. 1931). While express trusts of land must be manifested and proven by some writing [Statute of Uses and Trusts, § 456.010, RSMo 1969, V.A.M.S.], trusts which arise by implication of law are not affected by the statute and may be established by parol evidence. Parker v. Blakely, 338 Mo. 1189, 93 S.W.2d 981, 987[2–8] (1936). To establish a constructive trust in land, an extraordinary degree of proof is required: proof so clear, cogent and convincing as to exclude all reasonable doubt from the mind of the court. Purvis v. Hardin, 343 Mo. 652, 122 S.W.2d 936, 938[1, 2] (Banc 1938); Swon v. Huddleston, 282 S.W.2d 18, 25[7, 8] (Mo.1955).

■ It is sufficient to say that the evidence supports the findings of the trial court as to the agreement of partnership, its terms, the conduct of the parties in pursuance of the agreement, and other proofs belie the contention of defendants that the relationship between them was only that of grantors-grantees of an unconditional conveyance of plaintiffs' entire interest in the property. There was evidence, for instance, that the defendant Bill E. Olds came to the work site virtually every day for six months during the construction of the building and also secured workmen for the job, and when the construction was finished, displayed the residence to prospective buyers. Although Olds, regularly a building supply salesman, attempted to explain his frequent presence at the site was for the purpose of selling plaintiff building materials, Olds could neither tell what he had sold nor the cost of it, and the court obviously concluded that his expression of interest was more consistent with proprietorship than salesmanship. Perhaps most telling of the parol agreement contended for by plaintiffs, that defendants would take title in their names, obtain permanent financing to discharge the construction loan, and hold the land

and improvements for the benefit of the partnership, are the circumstances surrounding the conveyance. In order to facilitate the permanent financing, the parties entered into a real estate contract which recited a purchase price of $35,000, $10,000 of which was to be paid in cash by the purchasers, defendants Olds, and the balance to be paid through financing. It was acknowledged by all the parties that defendants never paid plaintiffs the $10,000, and was conceded by defendant Bill E. Olds that the recital for such payment in the real estate contract was a device to facilitate financing. The trial chancellor appears to have concluded that defendant Bill E. Olds, shown to have been convicted of mail fraud, was not worthy of belief and that the testimony of plaintiffs—that the property was to be sold after six months and the profits divided was to be preferred. There is sufficient basis for concluding that this determination was on evidence clear, cogent and convincing which excluded very reasonable doubt from the mind of the Chancellor.

The defendants contend, nonetheless, that even if the evidence supports an oral agreement to establish a trust in land, such an agreement is made unenforceable in equity by the statute of frauds. While equity will not enforce verbal agreements in the face of the statute of frauds, a constructive trust is within the provisions of § 456.030 which expressly exempts trusts which arise by implication of law from the effect of the statute of frauds. Swon v. Huddleston, *supra*, l. c. 282 S.W.2d at 26[10]; Thierry v. Thierry, 298 Mo. 25, 249 S.W. 946, 954[9] (1923). The defendants contend further, however, that absent proof of fraud there is no constructive trust and that all that the evidence shows is a breach of a mutual agreement to sell the property after six months and divide the profits, and in support cite the rule from Parker v. Blakeley, *supra*, l. c. 93 S.W.2d at 988:

Courts have been disposed to recognize two classes of implied trusts designating them as "resulting trusts" and "constructive trusts." A resulting trust is based upon the presumed intention of the parties and "arises where, and only where, such may be reasonably presumed to be the intention of the parties . . . ."
. . . The other class of implied trusts, "constructive trusts," are said "to rest upon the sound public policy" which requires that the law should not become the instrument of designing persons to be used for the purpose of fraud. "Dishonesty and deceit are not necessary ingredients" of a resulting trust, but fraud is an essential element of constructive trust.

A constructive trust, however, is not a technical trust but a device used by a court of equity to provide a remedy in cases of actual or constructive fraud to prevent unjust enrichment. March v. Gerstenschlager, 436 S.W.2d 6, 8[2] (Mo.1969); Service Life Insurance Co. of Fort Worth v. Davis, 466 S.W.2d 190, 196[4] (Mo.App., 1971). And since a breach of a fiduciary or confidential relationship is itself a constructive fraud, if such a relationship is shown between the putative trustee and beneficiary, no proof of actual fraud is necessary in order to establish a constructive trust. Swon v. Huddleston, *supra*, l. c. 282 S.W.2d at 25[9, 10]; Trieseler v. Helmbacher, 350 Mo. 807, 168 S.W.2d 1030, 1036[5–7] (1943). Thus, the availability to plaintiffs of the constructive trust remedy does not derive from an imputation of actual fraud, but from the breach of the fiduciary relationship which subsisted because [consistently with the principle of Parker v. Blakeley, *supra*, cited by defendants] "to permit [defendants] to retain the property thus procured would tend to induce fraud and would be against public policy upon the true owner doing equity." Decker v. Fittge, 365 Mo. 139, 276 S.W.2d 144, 150 (1955).

The defendants next contend that there was no evidence to support the finding that defendant Bill E. Olds was autho-

rized to act as his wife's agent in the agreement with plaintiff Robert Murphy and therefore the judgment against defendant Myrna J. Olds may not stand. While neither husband nor wife is empowered to act as the agent for the other merely by virtue of the marital relation, [Vaughn v. Great American Insurance Company, 390 S.W.2d 622, 627[10] (Mo.App.1965)], "[t]he agency of a husband for his wife may be shown by direct evidence or by facts and circumstances which will authorize a reasonable and logical inference that he was empowered to act for her or that she ratified his unauthorized acts". Ethridge v. Perryman, 363 S.W.2d 696, 701[6] (Mo.1963). While there is no direct evidence that Myrna Olds was aware of the specific partnership agreement between her husband and Robert Murphy to reconstruct the house and divide the profits from its sale, there was abundant circumstantial proof that she knew her husband had an interest in its reconstruction and that the conveyance of the home to them thereafter was not an ordinary sale of real estate. She admitted to having visited the site during reconstruction, "just to see what was going on" long before conveyance of the residence to defendants Olds was suggested. She was a signatory to the real estate contract which recited a purchase price of $35,000 with a cash down payment to plaintiff of $10,000 and to the loan documents which recited that $10,000 had been deposited with plaintiffs, when it is fairly inferable that she knew that no such payment had in fact been made. She nonetheless executed the documents, took title to the premises by the entireties, occupied them and then received rentals and thus reaped the benefit of whatever arrangement preceded between her husband and Murphy. All of the evidence gives rise to a fair inference that she was apprised by her husband of the significance and purpose of the recitals of the cash payment in the real estate contract and loan documents, so that her signatures were ratification and approval of the transaction her husband had arranged. "In these circum-

stances she is estopped to deny his authority to act as her agent in her behalf, and is chargeable with her husband's knowledge and understanding of the true contract; her husband's [breach of confidence and constructive fraud] is her [breach of confidence and constructive fraud] and she is bound thereby and must assume full responsibility therefor". Ethridge v. Perryman, *supra*, 363 S.W.2d l.c. 702[8].

The last point of error asserted—that parol evidence of the agreement between Robert Murphy and Bill E. Olds was not admissible to vary the terms of the real estate contract and warranty deed, writings complete on their face which contained no mention of an agreement to sell the property and divide the profits—has been already answered and needs no elaboration.

The judgment is affirmed.