**Gizella MAHLER, Plaintiff-Respondent,**

v.

**Richard TIEMAN and Mary Ann Tieman, Defendants-Appellants.**

**No. 37529.**

Missouri Court of Appeals, St. Louis District, Division Three.

April 26, 1977.

Whaley & McAuliffe, Clyde C. Farris, Jr., Clayton, for defendants-appellants.

Edward T. Wright, Sr., Edward T. Wright, Jr., St. Louis, for plaintiff-respondent.

JAMES R. REINHARD, Special Judge.

This is an appeal by defendants from a decree in equity creating a constructive trust in land and ordering that title be transferred by defendants Mary Ann Tieman and her husband, Richard Tieman, to plaintiff Gizella Mahler. The court also rendered judgment on defendants' cross-bill in favor of the defendants in the amount of $3,214.12 plus $85.05 interest for loans made to the plaintiff.

When this suit commenced, the title to the property, a residence in Webster Groves, Missouri, was held by the parties as joint tenants. Both sides claim ownership of the entire fee. Plaintiff claims defendants purchased the property on her behalf but put their names on the title. The defendants claim they purchased the property for themselves under an agreement by which the plaintiff could rent the premises.

The undisputed facts are as follows: Mrs. Mahler is the mother of Mary Ann Tieman. She was 82 years of age at the date of trial, worked as a seamstress most of her life, and had no experience with real estate purchases. Defendant Mary Ann Tieman is a school teacher, she and her husband own sixteen apartments, and both are experienced in real estate purchases.

In the spring of 1969 Mrs. Mahler asked the defendants to advise her in the purchase of a home. Her decision to purchase a home arose after Mrs. Tieman and Mrs. Mahler's minister convinced the plaintiff to move from the home of "the Albachs". The defendants had offered Mrs. Mahler a room in their house, but she declined, preferring to have the privacy of her own place.

In May, 1969 Mrs. Mahler became interested in the property which is the subject of this lawsuit and went to the realtor with her daughter. On May 5, 1969 a sales con-

tract was signed by Mrs. Mahler wherein she offered to pay $10,000.00 for the property with a $2,500.00 down payment. When the realtor presented the contract to the seller it was refused and the seller sent Mrs. Mahler a counter-offer of $11,000.00 with a $3,500.00 down payment. The second offer was made by interlineation on the original contract; only the amounts and acceptance date were changed. Acceptance of the counter-offer was shown by the initialing of the changed portions by the seller and Mrs. Mahler. Both Tiemans were present when Mrs. Mahler signed on May 5, 1969.

Mrs. Mahler had intended to pay the original down payment herself with some $1,600.00 which she had saved and another $1,200.00 owed her by the Albachs. She learned, however, that she would be unable to collect the money from the Albachs. After the second offer was made and accepted, Mrs. Mahler needed an additional $2,000.00 to make the down payment. She received $500.00 from her son in California, which she repaid within two months after the purchase. Defendants contributed over $1,600.00 to the down payment.

Mrs. Mahler delivered the $1,600.00 of her own money and the $500.00 loaned to her by her son to the Tiemans. On May 28, 1969 the closing took place with the Tiemans present. Mrs. Mahler did not attend. She entered the hospital shortly after the closing and according to Mrs. Tieman was "near death". The property was transferred by a deed which listed Richard Tieman and Mary Ann Tieman, his wife, as the sole owners of the property. They obtained a loan in the amount of $7,500.00 from Lafayette Federal Savings & Loan Association of St. Louis. On June 16, 1969 the Tiemans executed a note and deed of trust in favor of Lafayette Federal. The plaintiff moved into the house in May, 1969 and continues to reside there.

The written contract between Mrs. Mahler and the seller had a clause which stated: "Deed to *Mrs. Gizella Mahler and Mrs. Mary Ann Tieman.*" Mrs. Tieman signed the contract under the signature of Mrs. Mahler. Mrs. Tieman did not initial the changes. There is no explanation as to why the clause above was in the contract since Mrs. Tieman testified that she did not sign as purchaser but only at the request of the realtor to show that she was in agreement with her mother. She further testified that at the time of the execution of the contract between her mother and the seller, her mother was to be the sole purchaser and owner of the property. The defendants base their claim to title on a subsequent oral agreement between them and plaintiff, and not on the written document.

On August 30, 1969 a quit claim deed was executed deeding the property from defendants to Gizella Mahler, Richard Tieman and Mary Ann Tieman, his wife, as joint tenants. This was done to satisfy the Division of Family Services so that Mrs. Mahler could obtain welfare. Defendants' cross-bill in this action sought to have plaintiff's name removed from the deed because the transfer was made without consideration.

The parties dispute those facts which concern the intent of the parties in making various contributions towards the purchase and maintenance of the property. Mrs. Mahler testified that the Tiemans' money was a loan (the same as her son's); that her daughter had offered to give her all the financial help she needed in the purchase; that she had attempted several times to repay the loan; that she had not intended that the Tiemans share in the ownership of the house; and that she thought their names appeared on the deed because of the loan.

The Tiemans deny their contribution was a loan. Mrs. Tieman testified that the parties made a detailed oral agreement which provided for the Tiemans to purchase the property in their names alone; that this agreement came about when her mother accepted the counter-offer on the house; that her mother did not have the financial ability to meet the terms of the contract and was about to lose her $600.00 earnest money; that the agreement provided that her mother would give the Tiemans her $1,600.00 (which she had saved for her funeral) plus the $500.00 from her son; that

the Tiemans would in return pay for her funeral, purchase the property in their own names, and rent it to her; that Mrs. Mahler would pay the mortgage payments and a one-year premium on the house; and that they would be responsible for the major repairs. Defendants documented $1,603.34 for the down payment, $1,326.68 (twelve mortgage payments), and about $275.00 for other expenses.

Mrs. Tieman testified that she and her husband had acted as owners in that they took out the mortgage in their own names; that they made payments on the house when Mrs. Mahler was unable; that they undertook various repairs around the house; and that they made some insurance payments. Mrs. Tieman admitted that she did not report Mrs. Mahler's payments as rent on her tax returns; that she had never purchased a prepaid funeral for her mother; and that her mother had made demands for the title. She further testified that she went into the transaction as part investor and part protective daughter.

Mrs. Mahler denied the creation of a rental arrangement or any discussion of a prepaid funeral. She denied that she had saved her money for a funeral. She testified that she had made most of the mortgage payments during the four years and that she had made her payments directly to the lien holder. She claims she requested her daughter to make some of the payments so that she could save money to go to Europe on two different occasions to visit her sick sister. She testified that these were the only substantial sums that her daughter paid toward the purchase and upkeep of the house other than the amount paid toward the down payment.

In the court's decree it found that the plaintiff had purchased the property through defendants as her agents, but that defendants failed to have title transferred to Mrs. Mahler. The court decreed that the defendants held the property in constructive trust for the plaintiff and ordered the property conveyed to plaintiff. The court also found that the Tiemans had loaned money in the amount of $3,214.12 toward

the purchase and maintenance of the property, and therefore ordered the plaintiff to pay this sum plus interest to defendants.

On appeal, the defendants argue the court erred in finding a constructive trust existed because: 1) the plaintiff was permitted to introduce evidence of a constructive trust although it was not raised in the pleadings, and 2) the finding goes against the weight of the evidence. Plaintiff's petition alleged that she purchased the real estate and subsequent thereto the defendants had plaintiff transfer it to the names of the plaintiff and defendants for the purpose of avoiding probate with the full assurance to her that she could have it transferred back to her sole name. On the morning of the trial the plaintiff attempted to amend the pleading to state that the legal theory of her pleaded facts was a constructive trust. Plaintiff stated the amendment did not change the substance of her suit. Defendant Mary Ann Tieman objected saying she would be inept in defending against the added phrase. The court sustained the objection. No other objection was made by the defendants to any testimony or evidence admitted throughout the trial.

■ The defendants' argument in effect is that their original objections to the amendment of plaintiff's petition should be construed as a continuing objection. This is without merit. If they desired to restrict the trial court to the issues pleaded they should have made an appropriate objection to the evidence which was beyond the scope of plaintiff's petition. *Harris v. Goggins*, 374 S.W.2d 6 (Mo. banc 1963).

■ Defendants failed to object to any evidence introduced and this is fatal to their first point on appeal. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so

**628**

to amend does not affect the result of the trial of these issues." Supreme Court Rule 55.33(b). The court did not err in considering unobjected to evidence since the pleadings may be considered as amended to conform to the proof. *Heald v. Erganian*, 377 S.W.2d 431 (Mo.1964). The trial judge was generous in the assistance he gave the pro se defendants, but he was not obliged to make objections for them to testimony which did not conform to the pleadings.

The defendants argue that a finding of constructive trust is against the weight of the evidence. This being a court-tried case, we review upon both the law and the evidence, giving deference to the trial court's findings and its opportunity to observe the credibility of the witnesses. Rule 73.01; *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In cases where the petitioner seeks the creation of a constructive trust, the petitioner's burden is a great one. To establish a constructive trust in land, an extraordinary degree of proof is required; proof so clear, cogent and convincing as to exclude all reasonable doubt from the mind of the court. *Murphy v. Olds*, 508 S.W.2d 249 (Mo.App.1974); *March v. Gerstenschlager*, 436 S.W.2d 6 (Mo.1969); *Purvis v. Hardin*, 343 Mo. 652, 122 S.W.2d 936 (Mo. banc 1938).

"[A] constructive trust is the method or formula used by a court of equity as a means of effecting restitution or of rectifying a situation where, as the result of the violation of confidence or faith reposed in another, or fraudulent act or conduct of such other, the plaintiff, who seeks the aid of equity, has been wrongfully deprived of, or has lost, some title, * * * in the property which, otherwise and but for such fraudulent or wrongful act or conduct, he would have had." *Suhre v. Busch*, 343 Mo. 679, 123 S.W.2d 8, 15[3] (1938).

Defendants argue that there is no evidence of fraudulent conduct. If a fiduciary or confidential relationship exists between the alleged trustee and the beneficiary, no proof of fraud is necessary in order to establish a constructive trust. Bogert on *Trusts*, § 498, pp. 268–9; Scott on *Trusts*, § 462, p. 3412; *Swon v. Huddleston*, 282 S.W.2d 18 (Mo.1955). The breach of a confidential relationship is, in itself, a constructive fraud (Bogert on *Trusts*, § 498).

Although a confidential relationship cannot be precisely defined, it is generally synonymous with a fiduciary relationship. Equity does not limit the circumstances wherein a fiduciary relationship may exist but will look for those instances where a special confidence is reposed on one side with a resulting influence on the other. "The question is always whether or not trust is reposed with respect to property or business affairs of the other." *Service Life Insurance Co. of Fort Worth v. Davis*, 466 S.W.2d 190, 196[6] (Mo.App.1971). A confidential relationship is not proved merely by a showing of blood ties or family connection. *Beach v. Beach*, 207 S.W.2d 481, 486[6] (Mo.1947).

The mother did not attend the real estate closing and the trial court found that the defendants appeared in her behalf, to act as her agents in the purchase of the subject property. A valid agency may be found where the conduct of the parties manifests the consent of one person to another that the other shall act on his behalf and be subject to his control and consent by the other so to act. The manifestation of consent may be conduct without any contract between principal and agent. *Utlaut v. Glick Real Estate Co.*, 246 S.W.2d 760 (Mo.1952); *McKeehan v. Wittels*, 508 S.W.2d 277 (Mo.App.1974). The record reveals conduct of the parties sufficient to support the trial court's finding and, in addition, indicates the existence of a confidence much beyond the agency relationship. *Murphy v. Carron, supra.*

Defendants had offered plaintiff a place to live in their home. The daughter had encouraged her mother to move from where she was living. Defendants, knowledgeable in real estate affairs, served as advisors in the purchase of the home. Plaintiff gave the defendants the money she had for the down payment including

that loaned to her by her son. Mrs. Mahler expressed trust in her daughter and the record shows a willingness by Mrs. Mahler to be influenced by her daughter in her business affairs.

The question which remains is whether the Tiemans breached this relationship by having their names put on the deed instead of Mrs. Mahler's. This case is one with conflicting evidence. The trial court chose to believe the plaintiff. The court found that the defendants had breached the confidential relationship by placing title in their own names.

The plaintiff testified that she was the sole owner of the property and the defendants' contribution was a loan which she tried to repay. Her testimony is supported by substantial evidence including: the undisputed facts surrounding the negotiations and execution of the contract which show plaintiff was to be the sole purchaser; plaintiff, not defendants, repaid the $500.00 loaned by Mrs. Mahler's son; plaintiff contributed significantly more money toward the purchase of the house, including the real estate taxes which were included in the loan payments; and defendants admit that Mrs. Mahler offered to repay the money they spent towards the purchase of the house. Further, defendants' conduct is not consistent with their version of the arrangement in that no prepaid funeral was purchased; the payments to Lafayette Savings were not treated as income by defendants on their taxes; and no rental agreement was prepared for this detailed arrangement despite defendants' experience in the rental business. These facts, plus the relative positions of the parties as regards their age, experience and influence, constitute evidence of constructive trust which is clear, cogent and convincing. We agree with the trial court's finding of constructive trust.

We are not unaware of the fact that the defendants are the sole obligors of the note with a balance due of less than $5,000.00, which is secured by a deed of trust on this property. In defendants' pleading they admitted that the real estate was worth ap-

proximately $16,000.00. This serves as security for this loan and should be more than sufficient to protect the defendants from liability thereon. The circumstances surrounding this entire transaction further lead us to the conclusion that the defendants acted improperly and undertook these obligations in furtherance of the improper act. The court could not give defendants relief in this regard, but have made the defendants whole by the judgment on the cross-bill in their favor for $3,299.17.

Defendants claim that the lending agents should have been joined as a party in this suit under Rule 52.04(a). At issue in this action is the title holder of the subject property. As long as the mortgagee has a first lien on this property, it has no interest in who owns the title and joinder of it would not affect defendants' claim to the title.

The decree of the trial court is affirmed.

KELLY, P. J., and GUNN, J., concur.