**Herbert C. SCHOENBERG, Plaintiff-Respondent,**

v.

**Richard J. SCHOENBERG, Rita M. Schoenberg and Kathleen Schoenberg, Defendants-Appellants.**

No. 41344.

Missouri Court of Appeals, Eastern District, Division One.

April 21, 1981.

---

4. *See also,* MAI–CR 2d 15.00, Notes on Use, p. 15–12.

Cyril J. Clancy and Hiram W. Watkins, Clayton, for defendants-appellants.

William J. Fletcher, Clayton, for plaintiff-respondent.

STEWART, Presiding Judge.

Action in equity by plaintiff, the father of defendant Richard J. Schoenberg, against Richard, his former wife Rita and his present wife Kathleen seeking reconveyance of two parcels of real property referred to in the trial as parcels A and B. The trial court made a general finding that "Richard J. Schoenberg and Rita M. Schoenberg . . . acquired by [the] conveyances [of parcels A and B from plaintiff] only a fiduciary's interest in the real estate conveyed . . ." The court ordered reconveyance of their interest in the two parcels and provided appropriate ancillary relief.

In reviewing this court-tried case we give due deference to the ability of the trial court to determine the credibility of the witness where there is conflicting testimony and we will affirm its judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applied the law. Rule 73.01(3). *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

With these principles in mind we review the facts in the light most favorable to the trial court's judgment. Plaintiff was widowed in October, 1963. He had four grown children, Herbert R., Alice Reily, Kay Stockstrom and Richard J., who is referred to in the transcript as Jerry. There is an indication that plaintiff was not on good terms with Herbert R. Plaintiff had purchased approximately four and one-half acres of land in St. Louis County from his parents in June of 1964. On April 19, 1965 plaintiff conveyed a portion of the property to Robert Kelly pursuant to a contract of sale with the Kellys; plaintiff was represented by Thompson Realty Company in this transaction.

Some time before May 12, 1965 plaintiff spoke with his son Richard concerning the property. Plaintiff, who had had two or three heart attacks, was planning on going out of town for an extended period of time. He told Richard that he thought he would put the remaining land in the name of Richard and his wife so that "if anything happened" to plaintiff, "if [he] got laid up, got sick that [Richard] could be ready to help [plaintiff] out." If he died they could raise money and not have to go through probate. He told Richard that "if everything went alright" he would probably want to build on the land and he would expect Richard to turn the property back to him. If plaintiff should die any debts of plaintiff would be paid and the expenses incurred by Richard in the sale of the property would be paid and then Richard would divide the property equally between Kay, Alice and Richard. Richard told his father, "Dad, don't worry about it. I'll take care of everything. You go away. You don't have a thing to worry about."

Plaintiff then had Thompson Realty Company draw two quit claim deeds. One of the deeds conveyed a piece of ground 21′ × 190′ along the south side of the remaining property. This parcel referred to in the transcript as Parcel B was conveyed to Richard and Rita, his wife, and to Melvin Brockmeier and Dorothy, his wife, as to an undivided one-half interest. Dorothy Brockmeier is the sister of plaintiff. The Brockmeiers lived on property contiguous to the east line of the property held by plaintiff after the sale to the Kellys. Melvin was deceased at the time of the trial.

The other deed conveyed the remainder of the property then held by plaintiff to Richard and Rita. Plaintiff executed the deeds on May 13, 1965. The deeds were recorded by Thompson Realty Company and they were picked up from the office of the recorder by Richard. There was no consideration paid by the grantees of these deeds.

Prior to the time that plaintiff spoke to Richard about his intentions with respect to the property he had added Richard's name to his checking account. He frequently stayed with Richard and Rita and had

meals with them. Plaintiff's mail was sent to Richard's home and Richard frequently opened the mail without objection from his father. Plaintiff also kept his important papers at Richard's home. Plaintiff gave Rita a cashier's check for $400.00 with which to open a special account to be used to purchase things for plaintiff. He also paid $345.00 to purchase an air conditioner for Richard and Rita and Richard was to pay him at the rate of $30.00 to $40.00 per month. The money was to be put in the account that Rita was to open. The dates of these two transactions is not clear but it appears that they occurred sometime after the conveyances were made.

In May of 1965 after the deeds had been executed plaintiff paid for grading work and for rock spread on part of the property. In 1974 or 1975 plaintiff had the drive paved at his expense. His brother-in-law, Melvin Brockmeier, put in a turn around. The Brockmeiers used some of the property as a lawn and planted trees and shrubs on it with plaintiff's permission.

In 1974 Richard and Rita separated. In May of 1974 Richard came by the property while plaintiff was cutting the grass. Richard told plaintiff that any time he wanted the property reconveyed, Richard would sign the papers if plaintiff would have them drafted. Plaintiff also had a conversation with Rita who denied that she intended to "force the sale" of the property and said "[t]hat property is definitely yours, and I have no right to it, no claim to it whatsoever." Plaintiff had a deed prepared and delivered to Richard for his signature. Richard then advised plaintiff that he was not going to return the property to him.

Plaintiff did not personally pay the taxes for 1965 to 1974. He assumed that Richard and Rita were paying it out of the special account. In December of 1975 Richard gave plaintiff the tax bill for 1975 and told plaintiff to take care of it because it was plaintiff's property. The 1974 taxes were delinquent at the time. Plaintiff paid the taxes up to the time the case was tried.

The real estate in question was listed as an asset in the dissolution proceeding be-tween Richard and Rita. Other real and personal property was also involved in that proceeding. The property in litigation here was awarded to Richard. Rita received other real property and a monetary award. Rita makes no claim to the property in this case except as a judgment creditor.

The testimony of defendants was in conflict with that of plaintiff.

We view the findings and judgment of the trial court as imposing a constructive trust upon the subject real estate with Richard now holding his interest as trustee for plaintiff. The primary issue is whether the facts set out warrant the trial court finding that there was clear, cogent and convincing evidence of a constructive trust. *McFarland v. Braddy*, 560 S.W.2d 259 (Mo. App.1977).

It has frequently been stated that there is much confusion concerning the definition of a constructive trust and its constituent elements. Many cases seem to hold that fraud, actual or constructive, must be shown to establish a constructive trust. Other cases base their holdings on the theory of unjust enrichment or an unfair or wrongful holding without proof of fraudulent intent. See discussion and cases cited in *Swon v. Huddleston*, 282 S.W.2d 18, 25 (Mo.1955), and *McFarland v. Braddy, supra*. These two cases also enunciate the principle that if a fiduciary relationship exists no proof of fraud is necessary in order to establish a constructive trust. The basis for this principle is varied and the reader is referred to *Swon v. Huddleston, supra*, for a discussion of the principle.

Our threshold question is whether a fiduciary or confidential relationship existed between Richard and his father. There is no limitation on the circumstances which may give rise to the relationship. The relationship arises where one reposes trust in another with respect to the former's property or business affairs. *Mahler v. Tieman*, 550 S.W.2d 623 (Mo.App.1977). Although it has been said that the mere showing of blood ties or family connections does not prove a confidential relationship, it

has been held that "a proper and usual husband and wife relationship in and of itself denotes mutual confidence and is in that sense a confidential relationship." *Wilber v. Wilber*, 312 S.W.2d 86 (Mo.1958). We have here the relationship of father and son. This standing alone does not create a confidential relationship. Such a relationship is, however, a matter that can be considered by the trial court in reaching its conclusion. A parent would be much more likely to place confidence in his own children than a stranger. In this case we not only have the blood relationship but the additional factors that there was no consideration for the conveyance by plaintiff; plaintiff's checking account named Richard jointly with plaintiff; Richard held plaintiff's valuable papers; plaintiff's mail was directed to Richard's address and at that time Richard would frequently open his father's mail. We find that there is sufficient evidence to warrant the finding of the trial court that plaintiff had carried his heavy burden of proving the existence of a confidential relationship.

■ Having established a confidential relationship, there was evidence from which the trial court could find that Richard's agreement to carry out plaintiff's desires as to disposition of the property, i. e., to reconvey upon request or to distribute the property as requested upon the death of plaintiff, induced plaintiff to make the conveyances. In this case there was also evidence of subsequent statements of Richard and Rita in which they acknowledged that plaintiff was the owner of the property. Richard breached his fiduciary obligation when he refused to reconvey upon request and the trial court was empowered to render the judgment that it entered in this cause. *Mahler v. Tieman, supra.*

■ Defendants have raised the issue of the Statute of Frauds. A constructive trust is exempted from the provisions of the Statute of Frauds by reason of § 432.010 RSMo 1969. *Swon v. Huddleston, supra.*

■ It is also contended that the action is barred by the ten year Statute of Limitations in § 516.010 RSMo 1969. In making this contention Richard takes the date of the conveyance, May 13, 1965, as the date from which the statute began to run. In the case of breach of trust, express or implied, as here, the statute begins to run from the date upon which the trustee repudiates the trust. In this case the repudiation occurred when Richard refused to reconvey in 1975. The action is not barred by the Statute of Limitation. *Swon v. Huddleston, supra.*

■ Richard's final contention arises out of actions taken in the action for dissolution between Richard and Rita. In that action plaintiff in this cause learned that the property here in dispute was to be considered by the court in distributing the property of the parties. He then filed a petition to intervene. The trial court heard argument and denied the motion. Such an order is an appealable order. *State ex rel. Reser v. Martin*, 576 S.W.2d 289 (Mo. banc 1978). Neither plaintiff here nor either of the parties in the action for dissolution appealed. It is defendant's contention that plaintiff abandoned his present cause of action. Defendant cites us no authority in support of his contention.

■ Defendant by his answer pleaded the judgment in the dissolution action as res judicata. We must review the action on appeal upon the same theory upon which it was presented in the trial court. *Gibson v. Gibson*, 534 S.W.2d 100, 103 (Mo.App.1976). The defense of res judicata is not viable because plaintiff was not permitted to become a party to that action therefore his interests were not judicially determined. *Pirtle v. Pirtle*, 610 S.W.2d 317 (Mo.App. 1980).

The judgment of the trial court is affirmed.

WEIER and SNYDER, JJ., concur.