Gary **SASSENRATH** and **Carolyn Sassenrath, Plaintiffs-Appellants,**

v.

Henry L. **SASSENRATH** and **Helen M. Sassenrath, Defendants-Respondents.**

No. 41741.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 1, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 16, 1981.

Walter D. McQuie, Jr., McQuie & Dieter, Montgomery City, for plaintiffs-appellants.

Herbert E. Bryant, Clayton, for defendants-respondents.

STEPHAN, Judge.

Plaintiffs-appellants Gary and Carolyn Sassenrath (hereinafter plaintiffs) sued Gary's parents Henry and Helen Sassenrath (hereinafter defendants) to impose a constructive trust on a certain parcel of land for the benefit of plaintiffs. In a second count, plaintiffs sought to recover on the theory of quantum meruit the value of services allegedly rendered by Gary in helping to build a house on the land in question. The cause was tried without a jury. The circuit court refused to impose the constructive trust, but awarded plaintiffs $3,500 in quantum meruit. We affirm.

The facts of the case are as follows. In September 1976, Gary made an oral agreement with his parents. The subject of the agreement was the construction of a dwelling on a portion of his parents' land. The dwelling was to be built by Gary and his father, both of whom were experienced in carpentry and related skills. Henry Sassenrath agreed to pay for the building materials. It was expected by the parties that Henry would spend roughly $10,000 on the house, as this was the amount that he had given to assist another of his children. Henry testified at trial that he had told Gary at the time of the oral agreement that he only had $8,000 to spend on materials the first year and that the house would not be finished until Henry was able to supplement that amount by selling forty acres of land. No deadline was set for completion of the house.

The parties disagree about the nature of the property interest contemplated for Gary and his wife in the oral agreement made with Gary's parents. It is undisputed that the house was intended for the use of Gary and his wife and that defendants would transfer an interest in the property to plaintiffs at an unspecified future date. Defendants testified at trial that they had made it clear to plaintiffs that they intended to create a life estate in plaintiffs. The parents' intention was to give their son "a roof over his head for the rest of his life," by creating an interest that could not, in their view, be taken away from him by creditors. Gary and his wife, in contrast, believed that they has been promised a transfer in fee simple.

Gary and his father began to build in the fall of 1976 and, during the next year and a half, expended many hours of labor on the home. Their progress was occasionally hindered by weather, illness, responsibilities on the farm, and outside employment. By May of 1978, Gary had stopped working on the house, for reasons about which the parties do not agree. Gary testified that work slowed on the house in April of 1978 because of his father's unwillingness to work on the house. He further testified that because his father was always either unwilling to work on the house or "coming down sick all the time," Gary resolved to have the house finished by contracting the work out. According to his testimony, he asked his parents for a deed needed to secure a construction loan and, when they refused to convey the property to him, he quit working on the home and undertook this action.

Defendant parents tell a different story of the cessation of work on the house. According to defendants, Henry Sassenrath needed Gary's help to plant beans so that defendants could continue to "earn a living." Henry testified that he had a lot of work to do on the farm and that "they [plaintiffs] had quit helping me and I had to get my beans in first before I would go back to work on the house." A dispute arose between Gary and his parents over this question, and Gary refused to continue to work on the house. Defendants denied that plaintiffs had ever requested from them a deed to the property.

After May of 1978, the house remained unfinished. Defendants testified that there were months of work left to be done to complete the house. Gary, however, testified that the home was only a couple of weeks shy of completion. At trial, defendants testified that they intended to complete the house as soon as they were able; defendants' counsel stated that "[t]he parents are still willing to give him [Gary] a life estate in that property."

The trial court entered Findings of Fact and Conclusions of Law which read in pertinent part as follows:

"FINDINGS OF FACT

2. In September, 1976, Plaintiff Gary Sassenrath and Defendant Henry L. Sassenrath commenced construction of a frame dwelling ... [on property owed by defendants Henry and Helen Sassenrath], said construction continuing until on or about May 1, 1978.

3. The oral agreement between the parties in connection with said construction was to the effect that Plaintiff Gary Sassenrath would receive a life interest in the property and not fee simple title.

4. The fair market value of the structure in its present condition is approximately $35,000.00.

5. That Plaintiff Gary Sassenrath performed labor upon said structure and should be compensated for said labor in the amount of $3,500.00.

CONCLUSIONS OF LAW

The Court concludes that Plaintiffs are not entitled to have a constructive trust imposed upon the property described in their petition, having found no agreement for a conveyance of the property in fee simple title."

Plaintiffs read the trial court's "Conclusions of Law" to mean that the trial court believed that a constructive trust could not be imposed on a life estate. Plaintiffs contend that the court found all the elements necessary to impose a constructive trust but did not impose the trust solely because of its view that a life estate was not the proper subject of a constructive trust. We agree with plaintiffs that if this were the basis of the trial court's ruling, the court's conclusions of law would be erroneous and the decision subject to reversal. We can find no authority, nor was any cited by the parties, suggesting that the equitable device of a constructive trust cannot properly be imposed on a life estate.

■ We do not think, however, that we must accept plaintiffs' interpretation of the trial court's "Conclusions of Law." If another reasonable interpretation is possible, and that interpretation does not reveal an erroneous declaration of the law, then the deference that we owe the trial court requires us to adopt that interpretation and uphold the ruling.

In their petition, plaintiffs pled the existence of an oral agreement to convey land arising out of a confidential relationship between the parties. Their theory, judging from their petition and evidence, seems to be that defendants' breach of this agreement was in the form of an "anticipatory repudiation," when defendants refused to give plaintiffs a deed after Gary had detrimentally relied on the agreement but prior to the fulfillment of its terms.

Plaintiffs' petition requested that the trial court impose a constructive trust, without specifying whether the trust was to be for a fee simple absolute or for a life estate. Nonetheless, a reading of the transcript leads to the nearly inescapable conclusion that most of plaintiffs' evidence and cross-examination at trial constituted an attempt to show that defendants had promised their son and his wife an estate in fee simple rather than merely a life estate. Defendants, in response, devoted the bulk of their courtroom effort to showing that only a life estate, and not a fee simple estate, had been promised.

The principal factual issue joined at trial was thus the nature of the estate promised in the oral agreement. Certainly, the nature of the estate would be relevant to the court's determination whether the constructive trust imposed would be for a fee simple absolute or for a life estate. The nature of the estate would also be relevant, however, to the logically prior determination whether defendants had in fact repudiated the agreement. Defendants did not concede that they had repudiated the agreement. This was a genuine legal issue to be determined at trial, prerequisite to determining that a constructive trust of some sort was warranted.

■ The only mention of breach or repudiation in plaintiffs' petition is the assertion that "Defendants had no intention of conveying said property to Plaintiffs, and intended not to convey same to them." A reading of the transcript suggests that

plaintiffs' proof of breach or repudiation consisted of an attempt to show that when Gary Sassenrath requested a deed to the property, his parents indicated that they did not intend to deliver one. The fact that Gary sought the deed to secure a construction loan on the house, together with the fact that plaintiffs tried throughout the trial to show that the agreement was for a fee simple conveyance, suggests that Gary was in fact requesting, and expecting to receive, a deed in fee simple. The trial court's "Conclusions of Law" can be read to signify simply that the court found that there was no agreement to convey the property in fee simple, and that hence defendants' failure to convey a deed in fee simple was not a repudiation of the oral agreement between the parties. Having found no repudiation, the trial court correctly denied the request for a constructive trust.

We uphold the trial court's ruling refusing to impose a constructive trust on the property that was the subject matter of the oral agreement in this case. "[A] constructive trust is the method or formula used by a court of equity as a means of effecting restitution or of rectifying a situation where, as the result of the violation of confidence or faith reposed in another, . . . the plaintiff, who seeks the aid of equity, has been wrongfully deprived of, or has lost, some title. . . ." *Suhre v. Busch*, 343 Mo. 679, 123 S.W.2d 8, 15 (1938); *Mahler v. Tieman*, 550 S.W.2d 623, 628 (Mo.App.1977). If a fiduciary relationship exists between the alleged trustee and the beneficiary, no proof of fraud is necessary. The breach of a confidential relationship is in itself a constructive fraud. *Mahler v. Tieman*, supra, at 628. The record in this case leaves no doubt as to the existence of the confidential relationship, but the trial court could reasonably have found, and under our reading of its ruling apparently did find, that there was no *breach* of this relationship.[1] A party seeking the imposition of a constructive trust carries a great burden. To establish a constructive trust in land, an extraordinary degree of proof is required; the proof must be so clear, cogent, and convincing as to exclude all reasonable doubt from the mind of the court. *March v. Gerstenschlager*, 436 S.W.2d 6, 8 (Mo.1969); *Purvis v. Hardin*, 343 Mo. 652, 122 S.W.2d 936, 938 (en banc 1938); *Estate of Sheets v. Sheets*, 558 S.W.2d 291, 296 (Mo.App.1977); *Mahler*, supra, at 628. Plaintiffs in this case were apparently unable to carry this heavy burden and persuade the trial court that there was a breach of the confidential relationship involved. Because the trial court did not erroneously declare or apply the law, we will not disturb its ruling regarding the constructive trust. See Rule 73.01; *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).[2]

As an alternative to their constructive trust theory, plaintiffs asked the trial court for an award of money to compensate Gary for his labor, on the theory of quantum meruit. The trial court awarded plaintiffs $3,500 on this count. Plaintiffs ask this court, should it rule against them on the

---

1. As noted above, the trial court, in our view, apparently found no breach because it found no agreement to convey the property in fee simple. By failing to convey a deed in fee simple, defendants did not repudiate the existing oral agreement to convey a life estate. On appeal, plaintiffs now apparently concede that the agreement was for a life estate and ask us to impose a constructive trust on the land for the life of Gary. Were we to reverse the trial court's ruling because of an erroneous conclusion of law, which we decline to do, we would remand for a new ruling rather than order the imposition of a constructive trust for life. We do not think that the record clearly shows a breach of the oral agreement to convey the property for life. There is evidence in the record suggesting that Gary's parents were responsible for halting construction; but there is also ample evidence that Gary was the one who stalked off and refused to work further. The agreement was that Gary would get the house for life when he had helped to finish it, and defendants' position at trial was that they still intended, and had always intended, to convey the land for life whenever Gary completed his part of the bargain.

2. We wish to note that, in our view, after final disposition of this case on appeal the only matter that will be res judicata will be whether there has been a breach of the oral agreement up to this point. If, for example, the house is completed with Gary's help and his parents refuse to convey the property to him for life, he will not be foreclosed from bringing suit for a constructive trust at that point.

constructive trust issue, to set aside this award as insufficient. We decline to do so.

■ The judgment of a trial court in suits of an equitable nature will be sustained by the appellate court unless there is no substantial evidence to support it or unless it is against the weight of the evidence. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong. Rule 73.01; *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

■ The measure of recovery in quantum meruit suits for services is based on the nature of the services and the customary community charges therefor. The reasonable value of a plaintiff's services is not dependent on the financial benefit that accrues to a defendant. *Vosevich v. Doro, Ltd.*, 536 S.W.2d 752, 756 (Mo.App.1976); *Cavic v. Missouri Research Laboratories, Inc.*, 416 S.W.2d 6, 9 (Mo.App.1967).

■ In the case at bar, defendant Henry Sassenrath testified that he had been a carpenter for thirty-two years and had built a number of houses and other buildings. He testified that the total labor bill for the house until May, 1978, would have come to $5,000. He claimed to have done three-fourths of the work himself, but stated that he was willing to give Gary credit for half, or $2,500, of it.

Gary, in contrast, testified at trial that he worked a minimum of 1,335 hours and that the reasonable value of his labor was $14 per hour, making a total of just under $19,-000 that he believed was due him. In his petition he asked for considerably more, apparently relying on the market value of the house and the five acre tract where it is located, which he testified was $130,000. On appeal, he appears to concede the limited role of the market value of the finished product in measuring the value of services under Missouri law. He asks for $13,000 if this court believes he did half the work, or $6,250 if we believe he did one-quarter.

Clearly, this is not a case in which we should attempt to substitute our own assessment of the facts for that of the trial court. The trial court had before it Henry's testimony that Gary's labor was worth $2,500, in addition to Gary's testimony that it was worth $18,000 or more. The trial court could consider the qualifications of the witnesses and their demeanor while testifying; this court must give due regard to the trial court's opportunity to weigh these matters and to judge the credibility of the witnesses. Rule 73.01(c)(2). The trial court apparently viewed defendant Henry's testimony as the more credible, although the court's award was in fact forty percent larger than the amount Henry testified to. The court below was free to count Henry's testimony more heavily than that of his son, and accordingly we uphold the judgment on this question.

Affirmed.

GUNN, P. J., and PUDLOWSKI, J., concur.