Dan G. HARLAN, Plaintiff-Respondent,

v.

Wilbert W. BISHOFF, et al.,
Defendants-Appellants.

No. WD 32953.

Missouri Court of Appeals,
Western District.

Jan. 25, 1983.

Rehearing Denied March 29, 1983.

Roger J. Barbieri, Vito C. Barbieri, Kansas City, for defendants-appellants.

Dennis E. Egan, Kansas City, for plaintiff-respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This is an action in equity brought by the plaintiff, Dan Harlan (Dan) to impose a constructive trust for an undivided one-half interest in a seven acre tract of real estate that had been transferred by his deceased step-father, John Bishoff (John) to John's brother, the defendant, Wilbert Bishoff (Bert). Bert subsequently denied any agreement with John to give Dan any interest in the property. The trial court found

for plaintiff, ordered cancellation of a subsequent deed by Bert to himself and his daughter, Justine, also a defendant, declared a constructive trust in Dan's favor and ordered Bert to convey to Dan an undivided one-half interest in the property.

Defendants' Bert and Justine's sole point on appeal attacks the trial court's judgment claiming there was not clear, cogent and convincing evidence to support the determination of a constructive trust.[1] They claim there was not substantial evidence to support findings of fraud, a confidential relationship or transfer in contemplation of death and that the court misapplied and misinterpreted the law.[2] Defendants' point is denied, the judgment is affirmed. ·

In this court-tried case due deference is given to the court's ability to determine the credibility of witnesses and the judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously applied the law. Rule 73.-01(c)(3). *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

Dan's mother was Sunshine Bishoff, wife of John. Bert and John were brothers. John and Sunshine were married in 1937 and lived in a house paid for by Sunshine. In 1953 they sold that house and applied the proceeds ($4500) to the purchase of the property in question, seven acres of land located at 646 N.E. Barry Road, Kansas City, Clay County, Missouri. The balance of the purchase price of approximately $4300 was paid for by a loan secured by the property. This loan was paid off in 1961. Over the years John and Sunshine expressed their desire that upon their death the property would be divided equally between his blood relatives and hers. In 1971 they went to an attorney and discussed a testamentary disposition that one-half in-

---

1. "To establish a constructive trust in land, an extraordinary degree of proof is required: proof so clear, cogent and convincing as to preclude all reasonable doubt from the mind of the court." *Murphy v. Olds*, 508 S.W.2d 249, 251 (Mo.App.1974).

2. Not contested here are the trial court's rulings on the applicability of the "Dead Man's Statute", § 491.010 RSMo 1978; § 456.010 RSMo 1978, the "Statute of Frauds"; rulings on the hearsay aspects of John Bishoff's statements; nor the discussion of testimony of an attorney who met with John and his wife, Sunshine regarding an estate plan.

terest in this joint property would go to John's brother, Bert, and Sunshine's one-half would go to Dan and her other two sons. No wills were ever made. Sunshine died in April, 1972.

Going back to 1953, the plaintiff and his family visited John and Sunshine at the property nearly every weekend. There was evidence John treated plaintiff as his own son. Over the years Dan and his family purchased many items for and made improvements on the property. John and Bert were also very close. Since John could not dial a phone (he was illiterate) Bert called him daily and did work on the farm. John added Bert's name to several of his bank accounts. John did not believe in written documents, but relied upon a person's word and his handshake.

After Sunshine's death John and Bert became closer. Many witnesses testified John perceived Bert to be of impeccable integrity and honesty. John suggested Dan's name be added to the title of the property but that was never done. John got someone to drive him to the courthouse in May of 1973 where he added Bert's name to the deed. John obtained an oral agreement from Bert that he would see to it that the property was equally divided between Bert and Dan. John reiterated many times afterward that he wanted Dan to have one-half the property since Dan's mother had provided half of the purchase price and that the marriage had been a 50–50 partnership. Bert several times acknowledged and reaffirmed this agreement.

On July 21, 1977, John became ill, Dan's wife took him to the hospital. Dan and his family spent a great deal of time with John at the hospital. During his hospitalization John, in the presence of hospital personnel, said he wanted Dan to have half of the property. Following John's death on August 8, 1977, Bert suggested they sell the property and split the proceeds. Bert reaffirmed his intent to transfer a one-half interest in the property to Dan. He asked Dan for John's papers including the original deed so the lawyer could prepare the necessary papers. The lawyer also represented

Justine's boyfriend. At this time, approximately ten days after John's death, Bert avoided Dan's offer to buy out Bert's interest for $35,000, claiming he would have to check first with his daughter, Justine. Five days after Dan delivered the papers, Bert recorded a deed to himself and Justine as joint tenants. The deed was apparently prepared by the lawyer just mentioned.

The trial court found that some seventeen witnesses had presented clear, cogent and convincing testimony that John and Sunshine had expressed an intent to divide the property equally between their blood relatives. Bert's lack of memory at trial on any agreement attending the deed to him from John was ascribed to Bert's advanced age. The judge found a close family relationship between plaintiff and his family, John and Sunshine and defendant and that John had implicit trust and confidence in Dan and Bert. The court found the transfer from John to Bert to have been induced on John's reliance that Bert (in whom he had the utmost confidence and trust) promised to give plaintiff half the property. There was no consideration for this transfer nor for the transfer by Bert to himself and Justine. The court found that at all times John believed Bert would convey half of the property to Dan, and Bert on many occasions had agreed to do so, but that Bert's deed to himself and Justine was a violation of Bert's confidential and fiduciary relationship with and promise to John. In addition to cancelling the deed to Bert and his daughter and ordering Bert to convey an undivided one-half interest to Dan the court rendered an accounting (the figures are not here disputed) from and after the time Bert took control of the property. The parties agree that the rules applicable to this case are stated in the Restatement, Restitution, § 182 as follows:

"Where the owner of an interest in land transfers it inter vivos to another upon an oral trust in favor of the transferor or upon an oral agreement to reconvey the land to the transferor, and the trust or agreement is unenforceable because of the Statute of Frauds, and the

transferee refused to perform the trust or agreement, he holds the interest upon a constructive trust for the transferor, if

(a) the transfer was procured by fraud, misrepresentation, duress, undue influence or mistake of such a character that a transferor is entitled to restitution, or

(b) the transferee at the time of the transfer was in a confidential relation to the transferor, or

(c) the transfer was made as security for an indebtedness of the transferor."

It is to be noted the trial court specifically found a confidential relation (b) in this case between John and his brother Bert. When the transferee (Bert) refused to perform the agreement he held the property in constructive trust if *any* of the three situations denominated as (a), (b) or (c) above are met. *Basman v. Frank*, 250 S.W.2d 989, 993 (Mo. 1952), and *Musser v. General Realty Company*, 313 S.W.2d 5, 9 (Mo.1958). Therefore Bert and Justine's extended arguments of lack of fraud, (a), and the transfer from John to Bert not being made in contemplation of death (c) are irrelevant and will not be discussed here.[3]

■ A constructive trust is not a technical trust but is a method or formula used by a court of equity as a means of rectifying a situation where, as the result of the violation of confidence or faith in another plaintiff has been wrongfully deprived of some title. *Sassenrath v. Sassenrath*, 624 S.W.2d 77, 81 (Mo.App.1981); *Murphy, supra,* at 252. A breach of promise made during a fiduciary or confidential relation is itself the fraud, therefore no actual proof or fraud is necessary to establish a constructive trust. *Swon v. Huddleston*, 282 S.W.2d 18, 25 (Mo.1955); *White v. Mulvania*, 575 S.W.2d 184, 189 (Mo. banc 1978); *Murphy, supra,* at 252.

■ The Comment on § (1,b) to § 45 of the Restatement, *supra,* footnote 3, says in such a situation the wrong is committed not only against the transferor but the transferee. It is first necessary to determine whether John and Bert were in a confidential relation at the time of the transfer. A confidential relationship cannot be precisely defined. It is generally synonymous with a fiduciary relationship. *Mahler v. Tieman*, 550 S.W.2d 623, 628 (Mo.App.1977).

"Equity does not limit the circumstances wherein a fiduciary relationship may exist but will look for those instances where a *special confidence is reposed on one side with a resulting influence on the other.* 'The question is always whether or not trust is reposed with respect to property or business affairs of the other.'" (Emphasis added.)

■ A confidential relationship may exist because of a family relationship, the transferor justified in placing confidence in the belief that the transferee will act in his best interest, *Basman, supra,* at 993. *See also Jackson v. Tibbling*, 310 S.W.2d 909 (Mo. 1958).

■ The overwhelming weight of the evidence in this case established a confidential relationship between John and Bert, and although the fact of their blood relationship is not decisive it is a factor to be considered. *Schoenberg v. Schoenberg*, 615 S.W.2d 111, 114–15. John reposed trust in his brother when he put his name on his bank account. *Schoenberg, supra,* at 113. There being no consideration for the deed is another factor showing the trust John had in Bert. *Schoenberg, supra,* at 113.

In addition to the evidence establishing a confidential relationship defendants in their answer to Dan's second amended petition

**3.** The court did note in its findings that John was 85 and the transfer made in contemplation of death, although the main conclusion noted by the court was a breach of agreement pursuant to a confidential relation. The "contemplation of death" finding was unnecessary and will not disturb the result since a proper result was reached. *Kenilworth Ins. Co. v. Cole*, 587 S.W.2d 93, 96 (Mo.App.1979). *See also,* Restatement of Law (Second) Trust's § 45. (Where the owner of land makes infer vivos transfer to a third person without memorandum and that transferee refuses to perform— he holds it in constructive trust for a third person if at the time of the transfer the transferee and transferor were in a confidential relation.)

admitted John, "had the utmost trust and confidence in ... [Bert] as his brother," and of Bert's "devotion and fidelity" to John, thus establishing the status of a confidential relationship between the two. Their later statement denying any agreement went only toward the other requisite under the Restatement, *i.e.,* that a promise made during the confidential relationship was breached. On this point the evidence more than justified the trial court's finding, via some seventeen witnesses, that an agreement between John and Bert existed for Bert to then convey one-half of the land to Dan. The breach by Bert of this oral agreement made in a confidential relationship constitutes a constructive fraud for which equity will grant relief to Dan by declaring a constructive trust. *Swon, supra,* at 25–26; *White, supra,* at 189; *Schoenberg, supra,* at 115.

Justine although perhaps not guilty of any participation in the actions of her father will not be allowed to be unjustly enriched by his actions, *White, supra,* at 189–90; *Murphy, supra,* at 253.

Bert and Justine also mention in their brief Dan had, in his original petition, asked for all the property and then in his amended petition asked for one-half. However, when amended the first petition was no longer before the court and was not to be considered. *Welch v. Continental Placement, Inc.,* 627 S.W.2d 319, 321 (Mo.App. 1982).

There being substantial evidence supporting the trial court's finding of a confidential relationship and of Bert's agreement, the plaintiff, Dan, having sustained his burden by clear, cogent and convincing evidence justified the judgment declaring a constructive trust. That judgment is in all respects affirmed.